## BOYD *v.* KERWIN.

*(Supreme Court, Special Term, New York County.   August, 1891.)*

PRELIMINARY INJUNCTION—DOUBTFUL TERMS—"TENEMENT-HOUSE."

The question whether apartment houses or "flats" are "tenement-houses" within the meaning of an agreement not to erect on certain premises "any house of the character or description commonly known as 'tenement-houses,'" is not so reasonably free from doubt as to authorize a preliminary injunction in an action to restrain the erection of "flats" on such premises.

At chambers.   Action by James Boyd against Andrew J. Kerwin for an injunction.   Plaintiff moves for a preliminary injunction until the trial.

*Adolph L. Sanger*, for plaintiff.   *A. B. Chalmers*, for defendant.

O'BRIEN, J.   The plaintiff brings this action to restrain the defendant from erecting six apartment houses on the north side of Eighty-Second street, between Ninth and Tenth avenues, and asks for a preliminary injunction until the trial.   In the year 1860 the owners of the property between Seventy-Ninth street, Eighty-Third street, Ninth avenue, and Bloomingdale road, entered into an agreement which provided "that no building whatever shall be erected within forty feet of the front of any of the lots situated within the boundaries aforesaid, except of brick, stone, or iron, with roofs of slate or metal.   Also that there shall not be erected or allowed upon any of their said lots any brewery, distillery, slaughter-house, smith's shop, forge, furnace, steam-engine; brass foundry, nail or other iron factory, sugar bakery, livery stable, or any soap, candle, starch, varnish, vitriol, glue, ink, or turpentine factory, or any factory for tanning, dressing, or preparing hides, skin, or leather, or any other dangerous, noxious, or offensive establishment, trade, or business whatsoever, nor any house of the character or description usually known as a 'tenement-house.'"   The defendant has begun the erection of six five-story flats or apartment houses, and this motion for a preliminary injunction is made upon the claim by the plaintiff that the erection of these buildings by the defendant is a violation of the above covenant.   The question involved, therefore, is whether houses of the character about being erected by the defendant are tenement-houses, within the meaning of the covenant.   In this connection it must be remembered that apartment or flat houses had no existence prior to 1860, in this city.   We had two classes of houses which were designated as "private dwellings" and "tenements."   Since then there has grown up a class of houses which are now designated as "flats" or "apartment houses."   It is conceded by all that the term "flat" or "apartment house," as generally known, was not used in building in the city of New York prior to the past 25 years.   It is claimed, however, by the plaintiff, and as positively denied by the defendant, that buildings which are called "flats" or "apartment houses" were formerly known as "tenements," and that the word "tenement" was the only word applicable to such buildings.   Webster defines "tenement" to be "a dwelling-house or an apartment in a building used by one family; often, in modern usage, an inferior dwelling-house, rented to poor persons, or a dwelling erected for the purpose of being rented, called also a 'tenement-house.'"

In *Musgrave* v. *Sherwood*, 23 Hun, 674, note, it is said: "The word 'tenement,' in its ordinary acceptation, is applied to houses and other buildings, yet in its proper legal sense it signifies everything that may be holden.   It not only includes land, but rents and other interests."   In that case it was held that a covenant in the deed against the use of premises as a "tenement-house" was not violated by the use for a family hotel or apartment house.   It is true that the court in that case, at special term, in discussing the question as to what was a tenement-house, refers to the following definition, given in chapter 908 of the Laws of 1867, being an act for the regulation of

tenement and lodging houses in the cities of New York and Brooklyn: "A tenement-house, within the meaning of this act, shall be taken to mean and include every house, building, or portion thereof, which is rented, leased, let, or hired out to be occupied, or is occupied, as the home or residence of more than three families, living independently of another, and doing their cooking upon the premises, or by more than two families upon a floor, so living and cooking, but having a common right in the halls, stairways, yards," etc. This definition would undoubtedly include houses of the character about being erected by the defendant. The question here, however, is not what is defined as a tenement within the provisions of the act quoted, not what may be understood by real-estate brokers as being included within the clause or description of tenement-houses, but what was a tenement-house, within the meaning of the covenant made in 1860, a breach of which is claimed in this action. As stated in *Musgrave* v. *Sherwood*, at special term, the rule is correctly stated to be that "the burden is on the plaintiff to establish that the defendant's houses, as conducted and proposed to be, come within the meaning of the covenant. As the covenants, as construed by the plaintiff, work a restraint of what would otherwise be the lawful use of the defendant's houses and lands, to be restrained the breach made or threatened should be clearly and satisfactorily established." From the connection of the word "tenement" and the other kinds of business forbidden and of houses prohibited by the covenant, it would seemingly require that the construction to be given to the word "tenement" should be similar to that given in the covenant in the *Musgrave Case* as something "noxious or offensive," and therefore applicable to that class of tenements which, as distinguished from flat or apartment houses, are occupied by a number of poorer families.

In *Myers* v. *Sterne*, at special term, (not reported,)[1] decided in February, 1890, which involved the consideration of a covenant similar to the one here in controversy, and wherein it was sought to restrain the erection of houses similar to those proposed to be erected by the defendant here, it was said in the course of the opinion (although the case itself was decided upon another point) that "it is doubtful whether the buildings which the defendant Sterne proposes to erect can fairly be regarded as tenement-houses, within the meaning of that term, as used in the covenants." Here, also, as in the *Myer Case*, considerable evidence has been adduced for the purpose of showing a change in the condition of the entire neighborhood or locality covered by the covenant. For instance, it is shown that the greater portion of the houses erected on Eighty-Second street, between Ninth and Tenth avenues, are narrow houses, occupying in front from one-half to two-thirds of a city lot of 25 feet. Also that on both sides of the nearest corners, running a very considerable distance towards the premises in question, first-class apartment houses are erected; thus making every approach to the premises set forth in the complaint through a neighborhood of apartment houses. It is also claimed that such apartment houses were built upon and now stand upon lots of land covered by the very covenants and restrictions set forth in the complaint, and that they were put up without any complaint having been made by the plaintiff or any of the other adjoining lot-owners on the street to the erection of the apartment houses in question. Also that the apartment houses already constructed are of the same grade and character as those now being erected by the defendant. It is also claimed that for many blocks around in the neighborhood of the premises in question are erected many houses called "French flats" or "apartment houses," which are designed for and occupied by persons of education and refinement, and in many instances by persons of moderate means as well as of wealth and social position. Some force is also given to the suggestion that apartment houses of this character, which are expensively built, and fur-

[1]See note at end of case.

nished with all modern improvements, cannot be classed with houses which were designated in 1860 as tenement-houses. Upon the affidavits here, a controversy is also presented as to what effect the construction of apartment houses would have upon the value of property in the immediate neighborhood. On the part of the plaintiff affidavits are presented tending to support the view that an apartment house materially injures in value dwelling-houses in the immediate neighborhood; on the other hand, it is contended that the construction of first-class apartment houses has no such effect. It seems to me that the question itself would depend in a great measure upon the character of the private dwellings on the street. It cannot be that, if the private dwellings themselves were second-class private dwellings, such a neighborhood would be injured by the presence of expensive, well-furnished, and ornamental apartment houses. However this may be, such a line of inquiry is foreign to the question involved, which is the interpretation of the covenant in the deed of 1860. Unless the erection of buildings such as are proposed to be erected by the defendant (using the language of the *Musgrave Case*) "is forbidden by the letter or true spirit of the covenant, effects of the character indicated cannot control so long as they do not show the buildings or the business to be noxious or offensive." It is not my purpose, however, upon the affidavits submitted, to determine a question of so much importance, not only to the parties interested here, but to all those engaged in the building business and the community itself; but its final disposition should be left until the trial of the action. I have outlined in the foregoing sufficient to show that the question involved is not entirely free from doubt, and therefore, under the well-settled principles of equity, a preliminary injunction should not be granted. Upon a trial, and after hearing witnesses, and a more deliberate consideration of the questions involved, the plaintiff may be entitled to a judgment and receive the relief which he demands. Upon a motion such as this, however, for a preliminary injunction, where the result would be not only to seriously injure the defendant, but to give to the plaintiff at the outset the same relief and all the relief which he could obtain by a judgment after a trial, it should not be granted except where the right to such a remedy is clear, and a continuance of the acts complained of until a trial or review could be had would work injustice to the plaintiff. Long before the defendant's buildings can be completed a review of the order to be entered upon this motion can be had, and the questions of law settled. In the mean time the defendant takes the responsibility of proceeding with the buildings before a final determination as to his right to do so has been had, and if he is mistaken as to his rights the court will be in a position to prevent further injury being done to the plaintiff, or by suitable damages compensate plaintiff for any injury suffered. I am of opinion, therefore, that the questions in dispute are not so free from doubt that at the outset a preliminary injunction should be granted. The motion is therefore denied, without costs.

### NOTE.

Myers et al. v. Sterne et al., referred to above, was decided in the supreme court, special term, New York county, February 28, 1890. Mr. Justice ANDREWS filed the following opinion: "The brief submitted by plaintiffs' attorney contains the following statement: 'Upon the claim made by the defendant Sterne,—that is, that the total change of the character of this neighborhood since 1870 was not within the contemplation of the parties when they executed the restriction, and that the covenant should therefore (so far as the word "tenement-house" is concerned) be declared no longer in force,—we have been unable to find any testimony substantially contradicting the facts proven by the defendant. If the court is satisfied that that entire section of the city has so changed since 1870 that the purposes for which the land was restricted are impracticable, within the principles laid down in the case of Columbia College v. Lynch, 70 N. Y. 440, and Columbia College v. Thacher, 87 N. Y. 312, we submit that this should only be granted at the cost of the defendant Sterne.' The law applicable to the case was settled by the decision above cited. The evidence as to the change in the character of the neighborhood was very full and convincing, and, as plaintiffs' attorneys admit that they can find no evidence substantially contradicting it, it appears to me that the above statement

amounts to a concession by the plaintiffs that the restrictions in question should be declared to be no longer in force. The attorneys of the defendant Delano claim in their brief that the evidence as to the change in the character of the district does not warrant the setting aside of the restrictions; but in view of such concession of the plaintiff, and of the conclusive and practically uncontradicted evidence given on behalf of the defendants Sterne and Horne, I think that the relief prayed for the latter two defendants should be granted, and that the restrictions and covenants should be wholly vacated, set aside, and annulled. It is doubtful whether the buildings which the defendant Sterne proposes to erect can fairly be regarded as tenement-houses, within the meaning of that term, as used in the covenants, but, in view of the opinion above expressed, it is not necessary to discuss that point. Under all the circumstances of the case I do not think that any allowances or costs should be granted. The decree will be settled on notice."