(37 Misc. Rep. 439.)

KITCHINGS et al. v. BROWN.

(Supreme Court, Special Term, New York County. March, 1902.)

1. DEED—RESTRICTION—CONSTRUCTION.

A covenant in a deed executed in 1873, forbidding the erection upon certain premises of a tenement house, is not violated by the erection of seven-story modern apartment houses, containing on each floor two separate apartments designed for the use of families of some means.

2. SAME.

A deed forbidding the erection upon certain premises of a tenement house is to be construed according to its ordinary sense, and not according to the definition in Laws 1867, c. 908, § 17, declaring that a tenement house shall include every house occupied as a residence of more than three families, living independently, and doing their own cooking.

Action by George Kitchings and others against Kate C. Brown. Complaint dismissed.

Kurzman & Frankenheimer (Charles F. Brown, of counsel), for plaintiffs.
William H. Stockwell, for defendant.

TRUAX, J. The defendant is bound by the covenant created in 1873 not to erect upon her property any buildings within 40 feet of the front of said premises, except of brick or stone, with roofs of slate or metal, and not to erect or permit on any part of said premises any stable of any kind, coal yard, slaughterhouse, meat shop, tallow chandlery, steam engine, smith shop, forge, furnace, brass foundry, nail or other iron foundry, or any manufacturing of glass, gunpowder, starch, glue, varnish, vitriol, ink, petroleum, or turpentine, or any cooper's, carpenter's, or cabinetmaker's shop, or any establishment for tanning, dressing, preparing, or keeping skins, hides, or leather, or any brewery, distillery, sugar refinery, or bakery, or drinking or lager beer establishment, circus, menagerie, or public show, or exhibition of animals, railroad depot, railroad stable, car engine, or tenement house, or any other trade, manufactory, business, or calling which may be in any way dangerous, noxious, or offensive to the neighboring inhabitants. The defendant has erected on the premises bound by this covenant three modern apartment houses, each seven stories in height, and containing two apartments on each floor. Each apartment contains the following rooms: Parlor, library, dining room, butler's pantry, kitchen, five bedrooms, and servant's room, private bathroom and closet, and servant's bathroom and closet. Each apartment has its own private hallway, and each is handsomely decorated. Each apartment is lighted by electricity, has modern open plumbing, gas ranges, and telephones. The buildings are equipped with electric elevators, and in general are supplied with every modern convenience. The plaintiffs contend that these buildings are tenement houses, within the meaning of the covenant of 1873, and asked that the defendant be enjoined and restrained from erecting, or suffering to be erected, any buildings designed to be occupied as the home or residence of three or more families living independently of another, and doing their cook-

ing upon the premises. The claim of the plaintiffs is based in part upon section 17 of chapter 908 of the Laws of 1867, which is entitled, "An act for the regulation of tenement and lodging-houses in the cities of New York and Brooklyn." Section 17 declares that:

"A tenement-house within the meaning of this act, shall be taken to mean and include every house, building, or portion thereof which is rented, leased, let or hired out to be occupied, or is occupied as the home or residence of more than three families living independently of another, and doing their cooking upon the premises, or by more than two families upon a floor, so living and cooking, but having a common right in the halls, stairways, yards, water closets or privies, or some of them."

I am of the opinion that the word "tenement-house" in the above-mentioned covenant is to be construed according to its plain, ordinary, and popular sense, and not according to the definition in the act of 1867. That definition is not a general one, but is confined, by the terms of the act, to the act itself. The terms of written instruments are always construed according to their ordinary meaning. "The question here, however," said Mr. Justice O'Brien, in a similar case (Boyd v. Kerwin [Sup.] 15 N. Y. Supp. 721), "is not what is defined as a tenement, within the provisions of the act quoted, * * * but what was a tenement house within the meaning of the covenant." A tenement house then (in 1873), as well as now, has a well-defined popular meaning. When one says to-day that a person lives in a tenement house, he does not mean that such person lives in a house like the Navarro flats, and yet those flats are occupied by more than three families, living independently of one another, and doing their cooking upon the premises. Webster's Dictionary, of 1871, says that a tenement house is often in modern usage an inferior dwelling house rented to poor persons. Worcester's, citing American Cyclopædia, says that a tenement house is a building having tenements occupied by poor families. "Tenement houses," says the International Cyclopædia, vol. 14, p. 1851, "commonly speaking are the poorest class of apartment houses. They are generally poorly built, without sufficient accommodations for light and ventilation, and are overcrowded. The middle rooms often receive no daylight, and it is no uncommon thing for several families to be crowded into one of those dark and unwholesome rooms. Bad air, want of sunlight, and filthy surroundings work the physical ruin of the wretched tenants, while their mental and moral condition is equally lowered. Attempts to reform the evils of tenement life have been going on for some time in many of the great cities of the world." Certainly the evils of tenement life above referred to are not to be found in a tenement containing a parlor, library, dining room, butler's pantry, kitchen, five bedrooms, and servant's room, private bathroom and closet, and servant's bathroom and closet, in a building lighted by electricity, and having modern open plumbing, gas ranges, and telephones. It is hardly necessary to whitewash the walls and ceilings of a "tenement house" of this kind at least twice a year, and in the months of April and October, as required by the act of 1867. In fact the reading of that act shows that the tenement house therein referred to is the kind of a tenement described by the dictionaries.

This case is to be distinguished from the case of Levy v. Schreyer, 27 App. Div. 282, 50 N. Y. Supp. 584 (and cases of like character), in which the covenant was not to erect any house except a private dwelling. The complaint should be dismissed, with costs.

Complaint dismissed, with costs.