To the same effect is Fluker v. Banking Co., 81 Ga. 461, 8 S. E. 529.

The cases of Cravens v. Rodgers, 101 Mo. 247, 14 S. W. 106, Railway Co. v. Langlois, 9 Mont. 419, 24 Pac. 209, and Bus Co. v. Sootsma, 84 Mich. 194, 47 N. W. 667, are in conflict with some of the doctrines of the authorities heretofore referred to, but we think the weight of authority sustains our construction of the statute.

The contract between the defendant and the Miller & Brundage Company is not against public policy. It conduces very much to the comfort and convenience of passengers visiting the Falls of Niagara, as those who have occasion to visit that place know. While upon the cars, travelers are at liberty to make their arrangements for the use of carriages at the Falls, and when they alight from the train they can enter the carriages within the inclosure, and avoid the unpleasant ordeal of running the gauntlet of a score or more of proprietors of carriages who are in waiting upon the street adjoining the depot, soliciting employment. The charges for the use of the Miller & Brundage carriages, as regulated in the contract, are just and reasonable. No complaint is made in that respect. The plaintiff, we think, failed to make a case entitling him to the order appealed from. It should be reversed, with $10 costs and disbursements of the appeal, and his motion denied, with $10 costs. All concur.

---

(6 Misc. Rep. 238.)

### HART v. BROWN et al.

(Supreme Court, Special Term, Monroe County. December, 1893.)

1. SPECIFIC PERFORMANCE—WHEN DENIED—CHANGE IN CONDITIONS.
    A covenant in a deed to open a street through the grantor's land adjoining the lot conveyed will not be specifically enforced where it appears that, at the time the deed was made, the other lots could easily have been sold at good prices, while, at the time the covenant was to be performed, there was no sale at all for them, and that it would cost about three times as much to open the street as the grantee paid for his lot.

2. SAME—DAMAGES.
    Where specific performance is denied because subsequent events have rendered it inequitable, the complaint will not be dismissed, but the question of damages will be directed to be tried by a jury.

Action by Hart against Mrs. Brown and another for the specific performance of a contract by defendant Brown to open a street.

George D. Reed, for plaintiff.
H. F. Remington, for defendants.

RUMSEY, J.    The defendant Brown, in the month of November, 1888, conveyed to the plaintiff a lot of land extending 51 feet on Mt. Hope avenue, and running back a distance of about 119 feet.    At the time of the conveyance Mrs. Brown was the owner of a considerable tract of land, out of which this lot was carved.    She covenanted in her deed to the plaintiff to open a street along the north side of his lot, and extending beyond it to South avenue, which was several hundred feet east of the rear of his lot.    By her contract this street was to be opened within two years from the 1st of April, 1889.    Before that time, however, she conveyed the whole tract of land to the Oak Hill Cemetery Association, which is also made a party to this action, but which has not appeared or served any answer.    Consequently, that association does not object to the granting of the judgment which is asked for in the plaintiff's complaint. Indeed, it is not in a condition to object, for the deed from Mrs. Brown to the association is made subject to all the covenants contained in her deed to the plaintiff, and consequently the cemetery association takes subject to the plaintiff's deed, and cannot prevent the performance of the contract by Mrs. Brown if she were to be compelled to perform it.    Pom. Spec. Perf. Cont. § 465.    It appears by the proofs in the case that, after the action had been commenced, the interest of the Oak Hill Cemetery Association in the property was sold and purchased by one John B. Y. Warner.    As a notice of pendency of this action was filed, however, before that sale was made, Mr. Warner took subject to whatever rights the plaintiff should be adjudged to possess.

The plaintiff, for this property, paid the sum of $2,340.    He bought for the purpose of setting up a factory for the manufacture of tombstones and monuments, which he might sell to people who buried their dead in the Mt. Hope Cemetery, the entrance to which was directly across the street from the lot that he bought.    To fit the premises for that use, he built upon them a building adapted to his business, but which was so placed that, in connection with another building then upon the land, it occupied the whole width of the lot, leaving him no means of access for wagons to the rear of his lot, except over the new street which was to be opened immediately upon the north side of it, in pursuance of Mrs. Brown's agreement. He testifies (and his evidence is amply sustained) that it would be practically impossible for him to carry on his business upon this lot unless he should be able to deliver weighty masses of stone upon the rear part of his lot, where he can do such work as is necessary upon them to fit them for monuments, and that this can only be done if he has access to the rear of his lot for wagons and trucks along this new street.    For this reason it will be seen that it is of some considerable importance to him to have this contract per-

formed, at least so far as to give him a right of way to the rear of his lot. He testifies, also, that the street, if opened, will become a considerable thoroughfare for persons having occasion to visit Mt. Hope Cemetery, and that it would be of considerable advantage to him, and add greatly to the value of his business, if he could display his goods on the north side of his lot in the same way that he does now upon the front of his lot. This advantage, however, is somewhat fanciful, and can, I think, hardly be made to serve, by itself, as a reason for requiring the specific performance of the contract, although I have no doubt it would be a proper matter to consider in the assessment of damages. It appears from the evidence, and is practically undisputed, that in 1888, when this property was sold to the plaintiff, Mrs. Brown was preparing to lay it out into lots, and to open streets upon it, which she intended to put upon the market. One of these streets was delineated upon a map directly north of the plaintiff's premises, and extending from Mt. Hope avenue to South avenue. It was this street which the plaintiff expected to have opened, and which he now desires the court to require her to open. For some reason Mrs. Brown did not open the street by the 1st of April, 1891, as she agreed, and in September of that year her time to do so was extended until July, 1892, and for that extension, and the damages accruing to the plaintiff for her failure to open the street before, she paid the plaintiff $399. At the time when she made the original contract, and for a considerable time afterwards, there was a good market for city lots upon the outskirts of the city of Rochester, where this land lay, and, if her land had then been put upon the market, she would undoubtedly have been able to pay the expense of performing her contract, and have sold the lots at remunerative prices. Before the time, however, within which she was, by the extension, to perform the contract, the sale of lots in all the outskirts of the city of Rochester had fallen off very considerably, and it had become practically impossible to put this property on the market in that way. The expense of opening this street from Mt. Hope avenue to South avenue, and of completing the grading of it, would be about $6,000. Before the lots which were to be laid out on each side of it could be sold, it would be necessary to grade them to the level of the street at considerable expense, or else the expense of doing the necessary grading would have to come out of the purchase price of the lots. In either event a very considerable loss would accrue to the owner of the premises. The defendant claims that this new condition of affairs, which was unforeseen at the time the contract was entered into, has rendered the contract excessively burdensome to her, so that it would be a great hardship to require her to perform it, and for that reason she claims that a judgment for specific performance should not be ordered.

It is a well-settled rule, in actions of this nature, that not only must the agreement, the performance of which is sought, be fair and reasonable, but that its specific execution must not be oppressive; that is, it must not be such that its performance will work a great hardship to the parties. Pom. Spec. Perf. Cont. § 185. While this

general rule is well settled, it has always been a serious question whether the unfairness and hardship which will stand in the way of a judgment for specific performance must exist at the time of the making of the contract, or whether it is sufficient if, by subsequent events and changing circumstances, a contract which was originally fair and unexceptional has become so onerous that specific performance will be denied, although, if there had been no change in circumstances, the defendant would have been compelled to perform it.    Mr. Fry, in his work on Specific Performance, says "that the question of the hardship of a contract is generally to be judged of at the time at which it is entered into.    If it be then fair and just, it will be immaterial that it may, by the force of subsequent circumstances or change of events, have become less beneficial to one party, except where these subsequent events have been in some way due to the party who seeks the performance of the contract."    Fry, Spec. Perf. 182.    However accurate this may be as a statement of the law interpreted by the English courts, as to which I have not examined, it cannot, I think, be said to be the law in this country, and certainly not in this state.    Judge Story says that courts of equity will not proceed to decree a specific performance of a contract where, from a change of circumstances or otherwise, it would be unconscientious to enforce it.    Story, Eq. Jur. § 750a.    Mr. Pomeroy discusses the question at considerable length, and comes to the conclusion that, although agreements may be fair and just when made, their enforcement may be interfered with and prevented by subsequent unforeseen events, which introduced a sufficient element of inequality, unfairness, or hardship.    Pom. Spec. Perf. Cont. §§ 178, 187.    The leading case on that subject in this country, outside of the state of New York, is Willard v. Tayloe, 8 Wall. 557, which was decided by the supreme court of the United States in 1869.    The opinion in that case was delivered by Mr. Justice Field, and was concurred in by all the judges except the chief justice and Judge Nelson, who, while they agreed to the judgment rendered, did not concur in the reasoning by which it was supported.    In that case, Tayloe, in April, 1854, gave to Willard a lease of certain property in Washington city for 10 years, with the option to Willard to purchase it, at any time before the expiration of the lease, for a fixed price. Owing to the breaking out of the Rebellion, and the consequent influx of people and increase of business in the city of Washington, the property increased very largely in value.    In addition to that, owing to the immense issue of legal tender and other currency and notes during the war, and the suspension of specie payments, the relative value of paper currency, as compared with gold, very greatly diminished.    At the time the contract was made, gold was the only legal tender, but, before the time for the exercise of the option had expired, certain paper currency of the government became legal tender, but this was at a depreciation of nearly two to one, as compared with gold.    The contract when made, in April, 1854, was a perfectly fair and equitable one, and the price then agreed to be paid was a fair price.    In the month of April, 1864, and two weeks before the expiration of the time allowed in the option, Willard

offered to pay the consideration for the property in legal-tender notes, and demanded a deed. The legal-tender notes were then worth, in gold, something over one-half of their nominal value. Tayloe refused to convey, saying that he understood the purchase price was to be paid in gold, and that he would accept gold, but would not accept notes. Willard then brought his action to enforce a specific performance of the contract. The complaint was dismissed at the trial, and Willard appealed to the supreme court of the United States. The court laid down the rule that the discretionary power of the court in ordering a specific performance of the contract will not be exercised, although the contract may have been originally fair and equal in its terms, if its enforcement, from subsequent events, or even from collateral circumstances, would work hardship or injustice to either of the parties. Acting upon that rule in that case, the court refused a judgment for specific performance unless the plaintiff would pay the purchase price of the premises in gold, and adjudged that he might have specific performance upon his stipulating to pay in that way. The court of appeals in this state have laid down the same rule. In the case of Trustees v. Lynch, 70 N. Y. 440, the plaintiff had brought his action to compel the defendants specifically to perform a contract not to use certain premises for business purposes. The complaint had been dismissed in the superior court, and the judgment had been affirmed by the general term, and an appeal was taken to the court of appeals. Judge Allen, in delivering the opinion of the court, lays stress upon the fact (page 446) that it was not shown that there had been any change in the character of the locality and surrounding of the premises, or the occupation of the contiguous property, or the business in the vicinity, which would render it inequitable to compel a specific performance of the agreement. Upon the new trial which was ordered by the court of appeals, the defendants, acting upon the broad hint which was contained in Judge Allen's opinion, showed that there had been such a change in the character of the neighborhood as to defeat the object of the agreement, and to render it inequitable to compel the specific performance, and thereupon the complaint was dismissed again. In the decision affirming this last judgment, the court of appeals, approving the case of Willard v. Tayloe, 8 Wall. 557, lay down the rule that, though the contract was fair and just when made, the interference of the court should be denied if subsequent events have made performance by the defendant so onerous that its enforcement would impose great hardship upon him, and cause little or no benefit to the plaintiff. Trustees v. Thacher, 87 N. Y. 311, 317. This case must be deemed to settle the rule in this state, that a specific performance of a contract will be denied where it has become inequitable to order its enforcement by reason of subsequent change in the conditions, as well as where it was originally unfair and oppressive.

There can be no doubt, I think, in this case, that it would be exceedingly oppressive upon the defendant to be compelled to perform this contract to open this street at the present time. The expense of it is large,—almost three times the amount that was paid by the

plaintiff for his land.　It is certain that the defendant cannot, for many years at least, receive any profit from the sales of lots along this street, which she had expected to sell at a profit immediately on the street being opened.　The opening of the street further back than the rear of his lot would be of comparatively small importance to the plaintiff.　Certainly, any injury which he would suffer by not opening it could be very easily compensated for in damages. For this reason, I think the case is one where specific performance should be denied.　But the complaint should not, I think, be dismissed.　It is well settled now, in this state, that in actions of this kind, where the plaintiff fails to show himself entitled to equitable relief, the court may retain the action for the purpose of giving him compensation by way of damages.　It was always within the power of the court to give damages instead of specific performance, where the case was such that that course was proper. . It would have been competent in this case for the court at the special term to have taken evidence upon the question of damages, and awarded the damages if no specific performance should have been given.　But a better way, I think, is to deny the application for relief by way of specific performance, and to direct the question of damages to be tried by a jury at the circuit.　This course was approved by the court of appeals, and is the one which I think should be followed in this case.　Sternberger v. McGovern, 56 N. Y. 12.　The contract between the parties is entire,—simply to open this street from one end to the other,—and for that reason the defendant cannot, I think, be required to open a part of the street, and to pay damages for a failure to perform the rest of her contract.　Martin v. Colby, 42 Hun, 1.　But the defendant Brown in this case offered, upon the trial, to stipulate that specific performance might be adjudged of this contract so far as to require her to open the street from Mt. Hope avenue to the rear of the plaintiff's premises, thereby giving him the right of way into the rear of his land, and that the damages which he suffered, if any, by reason of the failure to open the street clear through to South avenue, might be assessed by a jury.　While I would not feel at liberty, I think, to order such a judgment except upon the stipulation of the parties, yet I have no doubt that a judgment to that effect would come nearer than any other to working out a right result.　For that reason, as the defendant is willing that such judgment should be rendered against her, the findings will provide for such a judgment if the plaintiff sees fit to accept it. If he does not, the only judgment can be that the case be sent to a jury for trial upon the question of damages.　Judgment accordingly.