THE TRUSTEES OF COLUMBIA COLLEGE in the city of New York, Appellants, v. ANNA M. LYNCH et al., Respondents.

Adjoining owners of land in a city may, by grant, impose mutual and corresponding restrictions upon the lands belonging to each, to secure uniformity in the structure and position of buildings upon the entire premises, or to reserve the lands for, and confine their use to certain purposes, as for private residences.

Statement of case.

The mutuality of the covenants in such case furnishes a good consideration, and the agreement itself is not void, as in restraint of trade, or as imposing undue restrictions upon the use of property.

Mutual covenants imposing such restrictions in perpetuity, and by their terms binding the heirs and assigns of the respective covenantors, are, in effect, grants of reciprocal easements, the right to the enjoyment of which will pass as appurtenant to the premises, in respect of which they were created; and in equity the premises are charged with the observance of the covenant in the hands of all subsequent grantees taking title with notice of its existence.

A court of equity has jurisdiction to compel the observance of such a covenant, and will enforce a specific performance, in the absence of evidence that there has been any change in the character of the locality which has rendered it inexpedient to observe the covenant, or has made a disregard of it indispensable to the practical and profitable use and occupation of the premises.

As to whether such a defense could avail, *quære.*

Whether or not such a covenant is one running with the lands, binding the grantees and subjecting them to a personal liability is immaterial, as affecting the jurisdiction of a court of equity or the right of the owners of one of the parcels of land to relief as against the owner of the other, upon a disturbance of the easement.

As to whether one of the covenantors, after he has parted with the title to his lands, can maintain an action to enforce observance of the covenant, *quære.*

It *seems,* that the owner of the land would be the proper party.

The question of damages in such an action is entirely immaterial.

The distinction between the binding obligation at law of covenants not running with the land, and the equitable rights recognized and enforced in such cases pointed out.

(Argued June 15, 1877; decided September 18, 1877.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, affirming a judgment in favor of defendant, entered upon a decision of the court on trial without a jury. (Reported below, 7 J. & S., 372.)

This action was brought to restrain the carrying on of business in certain premises situate on the north-east corner of Fiftieth street and Sixth avenue in the city of New York, of which the defendant Lynch was owner, and the other defendants tenants, upon the ground that the premises were

subject to a covenant reserving the property exclusively for dwelling houses.

The westerly portion of the block in question, prior to 1860, belonged to Joseph D. Beers, from whom defendant Lynch acquired title, and the portion adjoining on the east belonged to the plaintiffs.

On the 25th day of July, 1859, an agreement was executed by the parties, whereby the said Beers, in consideration of similar reciprocal covenants therein contained on the part of the plaintiffs, did for himself, his heirs and assigns, in respect to the lands which he then owned, covenant and agree to and with the plaintiffs, their successors and assigns, that his lands above mentioned, and every part thereof, should be subject to the following covenants, among others, namely: That the said Beers, his heirs or assigns, his or their tenants, and others occupying his lands, above described, or any part thereof, should not permit, grant, erect, establish or carry on in any manner on any part of said lands any stable, school-house, engine-house or manufactory, or business whatsoever; or erect or build, or commence to erect or build, any building or edifice, with intent to use the same, or any part thereof, for any of the purposes aforesaid.

And it was mutually covenanted and agreed between the parties, that the grants, covenants and agreements therein contained should not only be binding upon the parties, their heirs and successors, but that the same should be binding upon all persons who might thereby become interested in the lands, or any part or parts thereof, as owners, tenants or occupants, or otherwise claiming under or through the said Beers, or as lessees of the plaintiffs, or as assignees, under tenants, occupants or otherwise under such lessees, and might be enforced by or against any of such persons as occasion might require.

The agreement was duly recorded, and the defendant Lynch took her lot expressly subject to the conditions and restrictions of the agreement of Beers and the plaintiffs.

Before the action was commenced, the defendant Lynch erected a four-story dwelling house upon that part of the premises conveyed to her, between Sixth avenue and a line distant twenty-two feet eastwardly therefrom, and running to the center of the block, between Fiftieth and Fifty-first streets, of the full width thereof, fronting on and entered by a high stoop from Fiftieth street, and in width on Sixth avenue sixty-four feet. On the basement story, in front, by the side of the stoop, and on the side opening on Sixth avenue, were two French windows, and one on Fiftieth street, which were used as entrance doors to the basement.

Yates, one of the defendants, occupied a portion of the basement of said building as a dwelling for himself and family, having in one room thereof a real estate office, and using it for that business, with a business sign; and the defendants, William A. Blaisdell and Harrison A. Blaisdell, occupied a room in said office for receiving orders for painting, to be done by them, with a business sign.

The court found these facts, and also that the opposite side of Sixth avenue, between Fiftieth and Fifty-first streets, is entirely occupied by the Broadway Railroad stables; that there is a grocery store on the southeast corner and a liquor store on the southwest corner of Sixth avenue and Fiftieth street; and that Sixth avenue, in that vicinity, is occupied as a business street.

As conclusions of law, the court found:

"1. That there was no privity of estate between the plaintiffs and Beers.

"2. That the covenant sought to be enforced in this action does not run with the land.

"3. That the defendants' land is not bound by the covenant sought to be enforced in this action.

"4. That the restrictions imposed by the agreement between the plaintiffs and Beers did not mutually and reciprocally bind the plaintiffs and their assigns and Beers and his assigns.

"5. That the covenant against carrying on any business is

one liable to conflict with the public welfare, and retards the advancement of the community."

And directed judgment dismissing the complaint.

Judgment was entered accordingly.

*S. P. Nash,* for the appellants. Plaintiffs were *quasi* trustees for all the occupants of the land under them. (*Peek* v. *Matthews,* L. R. [3 Eq.], 515.) The agreement between Beers and plaintiffs was valid in law. (*Catt* v. *Tourle,* L. R. 4 Ch., 654, 658.) The covenant between plaintiffs and Beers was one running with the land. (*Brown* v. *Pertz,* 1 Abb. Ct. App. Dec., 227; *Whitney* v. *Un. R. Co.,* 11 Gray, 359; *Parker* v. *Nightingale,* 6 Ak., 341; *Van Rensselaer* v. *Read,* 26 N. Y., 558, 579.) In equity the question whether covenants run with the land or not is of no importance, the important question is whether the purchaser bought subject to them, so that his abiding by them formed an element of the consideration. (*Catt* v. *Tourle,* L. R. 4 Ch. App., 654; *Tulk* v. *Moxhay,* 1 Ph., 774; *Wilson* v. *Hart,* L. R. 1 Ch., 463; *De Mattos* v. *Gibson,* 4 De G. & J., 276; *Barrow* v. *Richard,* 8 Paige, 351; *Tallmadge* v. *E. R. Bk.,* 2 Duer, 614; 26 N. Y., 105; *Gibert* v. *Peteler,* 38 Barb., 488; 38 N. Y., 165; *Perkins* v. *Coddington,* Rob., 647; *At. Dock Co.* v. *Leavitt,* 50 Barb., 135; Washb. on Easements. [3d Ed.], 97, 106; *Whitman* v. *Gibson,* 9 Sim., 196).

*Samuel Hand,* for the respondents. The agreement between plaintiffs and Beers does not show a sufficient consideration. (*Mitchell* v. *Reynolds,* 1 P. W., 181; *Ross* v. *Sadgbeer,* 21 Wend., 167.) To sustain the agreement it must appear from the special circumstances that it was reasonable and useful. (*Prince* v. *Fuller,* 8 Mass., 223; *Chappell* v. *Brockway,* 21 Wend., 161; *Gale* v. *Reed,* 8 East., 86; *Young* v. *Simmins,* 1 Tyr., 226; *Wallis* v. *Day,* 2 M. & W., 273; *Pilkington* v. *Scott,* 15 id., 657.) The agreement was void for want of privity of estate between the parties. (Bing., 418; *Taylor* v. *Owen,* 2 Blackf., 301; *Plymoth*

v. *Carver*, 16 Pick., 183; *Parish* v. *Whitney*, 3 Gray, 516; *Dolph* v. *White*, 12 N. Y., 296; 1 Smith's Lead. Cas. [Phil. ed. of 1866], 212; *Van Rensselaer* v. *Smith*, 27 Barb., 104, 148.) The covenant did not run with the land, and plaintiffs have no remedy at law against defendants. (*Duke of Bedford* v. *British Museum*, 2 My. & K., 552, 571, 572; *Gallatin* v. *Oriental Bk.*, 16 How., 253).

ALLEN, J. It was competent for the plaintiffs and Mr. Beers, from the latter of whom the defendants derive title, while they were the owners of adjoining tracts or parcels of land in the city of New York, by mutual covenants to regulate the use and enjoyment of their respective properties, with a view to the permanent benefit and the advancement in value of each. The mutual and reciprocal covenants of the contracting parties constituted a good consideration for the covenants and agreements of both. All that is required, when the undertaking of one of two contracting parties gives the consideration for the undertaking of the other, is that there should be mutuality; covenants or undertakings by each, that each should come under some obligation, or release some right to the other; but a perfect reciprocity in the undertakings, or equality in the obligations assumed or rights released, is not involved in or essential to the sufficiency of the considerations. Equality is not of the essence of mutuality. It suffices that some promise or covenant has been made, or some right given up; and the adequacy of the same, as a consideration to support the undertaking of the other party, in the absence of fraud, is for the parties to determine. A covenant is well supported in law and in equity by any consideration, however slight. In this case, it is not material to inquire whether the covenant of the plaintiffs is, as viewed from our standpoint, the perfect equivalent of that of Mr. Beers. It was accepted by the latter as a sufficient consideration for the covenant made by him, and there is no evidence before us to impeach the agreeement as one not fairly and honestly made.

The agreement itself is not void, as in restraint of trade or as imposing undue restrictions upon the use of property. Covenants, conditions and reservations, imposing like restrictions upon urban property, for the benefit of adjacent lands, having respect to light, air, ornamentation, or the exclusion of occupations which would render the entire property unsuitable for the purposes to which it could be most advantageously devoted, have been sustained, and have never been regarded as impolitic. They have been enforced at law and in equity without question. The restrictions are deemed wise by the owners, who alone are interested, and they rest upon and withdraw from general and unrestricted use but a small portion of territory within the corporate limits of any city or municipality, and neither public or private interest can suffer. It is not alleged in the answer, nor was it proved upon the hearing, that there has been any change in the character of the locality, the surroundings of the premises, or the occupation of contiguous property, or the business of the vicinage, which has rendered it inexpedient to observe the covenant, or made a disregard of it indispensable to the practical and profitable use and occupation of the premises, so that it might be inequitable to compel a specific performance of the agreement. If such a defense could avail, it has not been interposed, so that the facts found by the learned trial judge, in respect of the character of the buildings, and the business carried on at this time in the Sixth avenue, are immaterial and cannot affect the result.

The purpose and intent of the parties to the agreement is apparent from its terms preceded by the recital. The agreement recites the ownership by the respective parties of adjacent premises particularly described, and these constitute the subject-matter of the mutual covenants. There was no privity of estate, or community of interest between the parties, but each could, by grant, create an easement in his own lands for the benefit of the lands owned by the other, and the purpose of the agreement was to create mutual easements, negative in their character, for the benefit of the lands of each.

It was the design to impose mutual and corresponding restrictions upon the premises belonging to each, and thus to secure a uniformity in the structure and position of buildings upon the entire premises, and to reserve the lots for, and confine their use to, first-class dwellings, to the exclusion of trades and all business, and all structures which would derogate from their value for private residences. The purpose clearly disclosed was, by the restrictions mutually imposed by the owners respectively upon the use of their several properties, to make the lots more available and desirable as sites for residences, and the agreement professes to, and does in terms, impose, for the common benefit, the restrictions in perpetuity, and to bind the heirs and assigns of the respective covenantors. This should be construed as a grant by each to the other in fee of a negative easement in the lands owned by the covenantors. An easement in favor of, and for the benefit of lands owned by third persons, can be created by grant, and a covenant by the owner, upon a good consideration, to use, or to refrain from using, his premises in a particular manner, for the benefit of premises owned by the covenantor, is, in effect, the grant of an easement, and the right to the enjoyment of it will pass as appurtenant to the premises in respect of which it was created. Reciprocal easements of this character may be created upon the division and conveyances in severalty to different grantees of an entire tract, and they may be created by a reservation in a conveyance, by a condition annexed to a grant, or by a covenant, and even a parol agreement of the grantees. (*Curtiss* v. *Ayrault*, 47 N. Y., 73; *Tallmadge* v. *East River Bank*, 26 id., 105; *Gibert* v. *Peteler*, 38 Barb., 488, affirmed; 38 N. Y., 165.) The right sought to be enforced here is an easement, or, as it is sometimes called, an amenity, and consists in restraining the owner from doing that with, and upon, his property which, but for the grant or covenant, he might lawfully have done, and hence is called a negative easement, as distinguished from that class of easements which compels the owner to suffer something to be

done upon his property by another. (Wash. on Easements, 5.) Easements of all kinds may be created and exist in favor of any third person, irrespective of any privity of estate or community of interest between the parties; and, in this respect, there is no distinction between negative easements and those rights that are more generally known as easements as a way, etc.

A covenant by the owner with A. B. his heirs and assigns, that it should be lawful for them at all times afterwards to have and to use a way by and through a close, etc., was held to be an actual grant of a way and not a covenant only for the enjoyment of such right. (*Holms* v. *Seller*, 3 Lev., 305; *Gibert* v. *Peteler, supra*; Wash. on Easements, 22, 28, and cases cited in note 1.) A negative easement, by which the owner of lands is restricted in their use, can only be created by covenant in favor of other lands not owned by the grantor and covenantor. The covenant made by Beers was valid and binding upon him, and had he retained the ownership of the premises, it would have been specially enforced by a court of equity. Upon a disturbance of the easement by him, it was capable of being enforced by the appropriate remedies at law or in equity at the suit of the owner of the dominant tenement, at the time of the violation of the covenant. The plaintiffs appear to retain the ownership of the premises to which the easement is appurtenant, and therefore this action is properly brought by them. Equity has jurisdiction to compel the observance of covenants made for the mutual benefit and protection of all the owners of lands, by those owning different parcels of the lands, and to secure to those entitled the enjoyment of easements or servitudes annexed by grant, covenant, or otherwise to private estates. (2d Story Eq. Jur., 926a, 927; *Barrow* v. *Richard*, 8 Paige, 351.)

It is strenuously urged, in behalf of the defendants and respondents, that there was no privity of estate between the mutual covenantors and covenantees, in respect of the premises owned by them respectively, and which were the subjects

of the covenants and agreements, and that the covenants did not therefore run with the lands, binding the grantees, and subjecting them to a personal liability thereon. This may be conceded for all the purposes of this action. It is of no importance whether an action at law could be maintained against the grantees of Beers, as upon a covenant running with the land and binding them. Whether it was a covenant running with the land or a collateral covenant, or a covenant in gross, or whether an action at law could be sustained upon it, is not material as affecting the jurisdiction of a court of equity, or the right of the owners of the dominant tenement to relief upon a disturbance of the easements.

The covenantor, Beers, bound himself, and in equity charged the premises with the observance of the covenant, and thus impressed this easement upon the lands then owned by him in favor of the lands then and now owned by the plaintiffs. A right, in respect of the defendants' lands, and affecting the use in behalf of the plaintiffs and their lands, existed, which, while Beers continued the owner, equity would have been enforced, and this right was a right in perpetuity, going with, and attaching to, the lands in the hands of all subsequent grantees taking title, with notice of its existence. An owner may subject his lands to any servitude, and transmit them to others charged with the same; and one taking title to lands, with notice of any equity attached thereto, or any outstanding right or claim affecting the title or the use and enjoyment of the lands, takes subject to such equities, and such right or claim, and stands, in the place of his grantor, bound to do or forbear to do whatever he would have seen bound to do or forbear to do. Lord COTTENHAM uses this language: "If an equity is attached to property by the owner, no one purchasing, with notice of that equity, can stand in a different situation from the party from whom he purchased." (*Tulk* v. *Moxhay*, 2 Phil., 774.) In the case cited, a covenant between grantor and grantee, in respect to the use of the granted premises, was enforced against subsequent grantees thereof, with notice.

The rule is of universal application, as stated by Lord COT-TENHAM. (*Tallmadge* v. *E. R. Bank, supra;* Story's Eq. Jur., §§ 395, 397.) Here each successive grantee, from Beers, the covenantor, down to and including the defendant Lynch, the present owner, not only had notice of the covenant, and all equities growing out of the same, but took their title in terms subject to it, and impliedly agreeing to observe it. It would be unreasonable and unconscientious to hold the grantees absolved from the covenant in equity for the technical reason assigned, that it did not run with the land, so as to give an action at law. A distinguished judge answered a like objection in a similar case by saying, in substance, that, if an action at law could not be maintained, that was an additional reason for entertaining jurisdiction in equity and preventing injustice. The action can be maintained for the establishment and enforcement of a negative easement created by the deed of the original proprietor, affecting the use of the premises now owned and occupied by the defendants, of which they had notice, and subject to which they took title. There is no equity or reason for making a servitude of the character of that claimed by the plaintiffs in the lands of the defendant, an exception to the general rule which charges lands in the hands of a purchaser with notice with all existing equities, easements, and servitudes. The rule and its application does not depend upon the character or classification of the equities claimed, but upon the position and equitable obligation of the purchaser. The language of courts and of judges has been very uniform and very decided upon this subject, and all agree that whoever purchases lands upon which the owner has imposed an easement of any kind, or created a charge which would be enforced in equity against him, takes the title subject to all easements, equities and charges however created, of which he has notice. (*Parker* v. *Nightingale*, 6 Allen, 341; *Catt* v. *Tourle.* L. R. 4 Ch. App., 654; *Carter* v. *Williams*, 18 W. R., 593, before V. C. JAMES; *Wolfe* v. *Frost*, 4 Sandf. Chy. R., 72; *Tulk* v.

*Moxhay, supra; Whiting* v. *Union R. Co.*, 11 Gray, 359; *Gibert* v. *Peteler, supra; Barrow* v. *Richard, supra; Greene* v. *Creighton*, 7 R. I., 1; *Bronner* v. *Jones*, 23 Barb., 153.) The grantees from Beers became entitled to the benefits of the corresponding covenants on the part of the plaintiffs, and of the easement in their lands, and in the purchase had recompense for any diminution in the value of their own lands by reason of the restrictions upon their use. Should it appear that the plaintiffs had parted with their title, it might be questionable whether they could maintain the action. The right exists for the benefit of the owners of the lands for the time being, and it may be waived or released by them, and it would seem they would be the proper parties to bring the action. At most, the plaintiffs would be but the dry trustees of the covenant for the benefit of their grantees, and in equity and in all cases under the present system of practice, the real party in interest should bring the action. But the plaintiffs right of action, if a cause of action exists, does not appear to have been questioned, so that no question as to parties is in the case. The cases in which it has been held that an action at law will not lie, upon a covenant restricting the use of the lands against the grantees of the covenantor, when there was no privity of estate between the covenantor and covenantee, do not aid us in determining whether there may not be relief in equity for a violation of the equitable right resting upon and growing out of the covenant treated as, in substance, a grant and the consideration upon which it was made.

The author of the American note to *Spencer's Case* (1 Smith's Leading Cases [6th Am. Ed.], 167), recognizes the distinction between the binding obligation at law of covenants not running with the lands and the equitable rights recognized and enforced in equity in such cases. He says, speaking of such a covenant: "But although the covenant, when regarded as a contract, is binding only between the original parties, yet, in order to give effect to their intention, it may be construed by equity as creating an incorporeal

heriditament (in the form of an easement) out of the unconveyed estate, and rendering it appurtenant to the estate conveyed; and when this is the case, subsequent assignees will have the right and be subject to the obligations which the title or liability to such an easement creates."

In *Hills* v. *Miller* (3 Paige, 254), and *Trustees of Watertown* v. *Cowen* (4 Ib., 510), and *Barrow* v. *Richard* (8 Ib., 351), there could have been no recovery at law, or actions on the covenants; but upon the deeds and instruments, in writing, under seal, it was held that easements had been granted out of the property sought to be charged, which had come by assignment to the hands of the defendants, which were intended by the parties to be appurtenant to lands owned by the plaintiffs; and the observance of the easements was enforced.

*Barrow* v. *Richard*, although differing in circumstances from the present case, was decided upon the ground that is controlling here, that the parties intended to create mutual easements for the benefit of the owners of the whole tract, and that the want of a remedy at law would sustain, rather than defeat, the jurisdiction of equity, and that the covenant should consequently be enforced by injunction against those who held the land to which it related. The lands of the defendants are equitably chargeable with the easement created by Beers, and the objection that the easement is not obligatory upon the defendants as a contract, cannot avail as a defense to a suit in equity to restrain the defendants by injunction from its violation and a destruction of the easement.

There is no waiver of the covenant and consequent surrender of the easement, alleged in the answer, proved upon the trial, or found by the judge. The building was the class of buildings permitted by the easement and suitable for occupation as a private residence. It was not specially adapted to any other use, and the plaintiffs were not bound to foresee, before its completion, that it could or would be applied to any purpose prohibited by the covenant. So far as appears

their objection was seasonable. The plaintiffs did not stand by and keep silence when it was their duty to speak, and the defendants have a building which they may use for purposes contemplated by the parties. It was assumed by the judge at the trial, and does not appear to have been questioned that the businesses carried on by the defendants Yates and Blaisdells, were violations of the covenants and forbidden by it. If they were not, that was a proper question to be litigated upon the trial, and may be tried upon the new trial which must be had. There is nothing in the record from which we can determine, that if permitted, such businesses will not defeat the object and purpose of the agreement of the parties, and deprive the plaintiffs of the substantial benefit of the covenant. If the occupation and use of the premises by the defendants in the manner reported by the judge is in contravention of the spirit, as well as the letter of the covenant, the question of damages is wholly immaterial. Upon that question men might differ, and it might be thought that the damages, if any, were so trifling as to be inappreciable, but the parties had the right to determine for themselves in what way and for what purposes their lands should be occupied irrespective of pecuniary gain or loss, or the effect on the market value of the lots. Doubtless another trial will, upon other facts, present, other questions, and there may be objections to a recovery not disclosed by the record, but upon the record before us the judgment must be reversed, and a new trial granted.

All concur, except RAPALLO and MILLER, JJ., absent.

Judgment reversed.