Minshall, J.
A number of questions presented in argument as arising upon the record, need not, from the view we take of the case, be disposed of here. (1.) Thus it is claimed that the rights conferred by the agreement between the original parties, did not pass to the present owner of the railroad, because “ successors ” are not named, and that, therefore, the right-of-way itself, as well as the agreement as to fencing, was limited to the original company, and that the present owners can take nothing under that agreement. But, speaking for myself, I think this is not so. Being a grant to a corporation aggregate, it might last forever, and so the word “ successors ” was not necessary to create a perpetuity of right, or a fee sim *85 pie. Words of perpetuity are only necessary to create such right, where the grant is to a corporation sole. 2. Blk. Comm. 109, Angelí & Ames, Corp. § 172; Overseers of the Poor v. Sears, 22 Pick. 122; Shaw, C. J., 126, Mora. Corp. § 330. (2.) Again it is contended that the obligation to build the fence is a personal one, binding upon the grantor only, and that it was not susceptible of being imposed upon the land so as to run with it as against subsequent purchasers. But, speaking for myself, I am inclined to think, after a pretty full examination of the authorities, that there is nothing in the nature of the burthen that would prevent its being made to run with the land of the grantor as against subsequent owners, in favor of the right-of-way granted. That it would not have been so at common law may be conceded. It, with characteristic rigidity proceeded upon a few inelastic principles. It did not admit of any new or unusual burthens being imposed upon the land, and required in all instances that a privity of estate should subsist between the parties — the owner of the land upon which the burthen was placed and the owner of the land enjoying the benefit. But, to prevent the unj ust disappointment of expectations raised by agreements not regarded at law, equity, in the exercise of one of the frequent grounds of its jurisdiction, that of fraud, recognized and applied a different principle to such covenants. It took into consideration the convenience of the parties and their intention in the matter, rather than the technical rules of the common law, and generally gave effect to the intention, where the covenant concerned the land and would promote the convenience of the parties in the iise and enjoyment of it. Such covenants were not regarded as collateral, and were made to attend the land and affect its ownership as against purchasers with notice. Whitney v. Union R. R. Co., 11 Gray, 359, 364; Trustees v. Finch, 70 N. Y. 440, 449; 1 Smith’s Leading Cases, 6 Am. Ed. 167, Pom. Eq. Juris. § 689, § 2295 and § 1342. Holm. Com. Law, 392 et seq. There are, however, cases and authorities which limit the doctrine to what are called restrictive covenants, and stop short of affirmative ones, like that in this case. Pol. Cont. 227, 228. But they are not general. *86 Many cases are to be found where affirmative covenants have been held to run with the land, on the ownership of which the burthen of performing them is imposed. Blain v. Taylor, 10 Abb. Pr. 228; Burbank v. Pilsbury, 48 N. H. 475; Bronson v. Coffin, 108 Mass. 175; Kellog v. Robinson, 6 Vt. 276; Holmes v. Buckley, 1 Abr. Eq. 27; Allen v. Culver, 3 Denio, 284, 293; Pom. Eq. Juris. § 689 and n. 5, § 1295 ; Holm. Com. Law, 402. And, in Huston v. R. R. Co., 21 Ohio St. 236, an agreement of the railroad company to keep up the fences and crossings, was held, by this court, to run with the land so as to be binding as between the assignees or grantees of both the parties. And, in the prior case of Easter v. Railroad Co., 14 Ohio St. 48, the agreement of the owner in his grant of the right-of-way to the company to keep up the fences, was, also, held to run with land. Grholson, J., in delivering the opinion, said : “The construction and maintenance of a fence on each side of the strip of land over which the right-of-way was to be exercised, manifestly affected the mode of enjoying it, and it may properly be added," beneficially to both parties.” In this case “assigns” were mentioned. But this is not material, where it may be inferred from the circumstances that such was the intention. Thus in Masury v. Southworth, 9 Ohio St. 340, it was held that a covenant by a lessee to insure ran with the land, and might be asserted by the assignee of the reversion against the assignee of the lessee, though not mentioned, where it appeared from the circumstances that such was the intention of the parties to the covenant. The addition of the agreement to sustain, to the agreement to build the fences, necessarily makes the obligation coextensive with the duration of the grant, and compels the inference that the parties intended to treat it as attending the land of the grantor so long as the way granted should be used for the purpose of a railroad. “An owner may subject his lands to any servitude, and transmit them to others charged with the same; and one taking the title to lands, with notice of any equity attached thereto, or any outstanding right or claim affecting the title or the use and enjoyment of the lands, takes subject to such equities, *87 and such, right or claim, and stands in the place of his grantor, bound to do or forbear to do whatever he would have been bound to do or forbear to do.” Allen, J., in Trustees v. Lynch, 70 N. Y. 449. In equity, the precise form of the covenant or agreement is immaterial, if the intention is reasonably •clear. Thus, it is said : “ It is not essential that it should run with the land at law. A personal covenant or agreement will be held valid and binding in equity on a purchaser taking the estate with notice. It is not binding on him merely because he stands as an assignee of the party who made the agreement, but because he has taken the estate with notice of a valid agreement concerning it, which he cannot equitably refuse to perform.” Whitney v. Union Ry. Co., 11 Gray, 364. Bigelow, J.
But it is not necessary to determine either of these questions. The suit was brought to enforce a claim based upon the obligation of the company, created by the statute (§§. 3324 and 3325, R. S.) to fence its track. It, by way of defense, relied upon a certain agreement as bringing it within the provisions of section 3329. The agreement obliges the owner of the land from which its predecessor acquired its right-of-way, to keep up and maintain the fences along the track on each side; and the plaintiff derives his title from th'e same person. This agreement, whether susceptible of being admitted to record or not, was not recorded until after the suit was brought. And the agreed statement is “ that the plaintiff had no actual notice of the existence of said paper writing.” Now, conceding that there may be some question as to whether such an agreement may be made to run with the land so as to affect a subsequent purchaser, yet, in every case, where it is so held, it is subject to the equitable qualification that the purchaser had ' notice of the agreement. In treating the subject, Mr. Pollock says: “All these rights and liabilities being purely equitable, are like all other equitable rights and liabilities subject to the rule that purchase for value without notice is an absolute defense.” Pol. Cont. 226, Pom Eq. Juris. § 689. And we may further •observe, that to give them such effect as against, a purchaser *88 without notice, would, not only be inequitable, but contrary to the policy of our recording statutes.
The fact that the defendant was in the possession and occupation of its road over the land at the time the plaintiff purchased, does not amount to constructive notice of the existence of such agreement. Such possession would be notice of the usual incidents of such right-of-way, but not of such as are exceptional. The general duty to fence its track is imposed by statute upon a railway-company. This was the statute at the time the plaintiff purchased. The right asserted by the defendant is exceptional to its statutory duty, and its possession was not, therefore, constructive notice to the plaintiff of its existence. There must be some visible material object upon or connected with the land, the sight or knowledge of which would reasonably suggest the existence of the right to constitute constructive notice. Pom. Eq. Juris. § 600. No such object is shown to have existed in this case, from which it might reasonably have been inferred that the owner of the land purchased by the plaintiff, was under an obligation to fence as claimed. Nor had there been any such exaction of the right upon the one hand or performace of the duty upon the other, as would, by its notoriety, have amounted to notice. Had the instrument been properly executed, acknowledged and recorded, it would have constituted notice; but such was not the case; and the rights of the defendant under it are of an equitable nature, and cannot avail against a purchaser without notice.
The provision contained in section 3329, of the Revised Statutes, to the effect that section 3324 shall not be held to affect “any contract or agreement” between “any railroad ” and “the proprietor of lands adjoining” for “the construction and maintenance of fences,” is limited by its terms to parties to the agreement; and, whilst we have no doubt but that such agreements may be made to attend the ownership of the lands adjoining the road, yet this can only be done against those who purchase with notice, actual or constructive.

Judgment affirmed.