EDWARD LUCIUS FINCH and Another, as Trustees under a Certain Deed of Trust, Respondents, *v.* UNITY FEE COMPANY, INC., and Others, Appellants, Impleaded with CECELIA P. WUERZ and Others, Defendants.

First Department, February 6, 1925.

Deeds — restrictive covenants — covenant in deed that grantee, his heirs and successors would not erect building on lots purchased, which were located in rear of grantor's premises and in rear of grantee's premises, without grantor's consent — grantee conveyed one of lots subject to similar restrictions — said lot was subsequently acquired by one of defendants through mesne conveyances — prior action between other parties resulted in judgment compelling the owners of one of lots to remove structure erected thereon — original purpose for covenant has not ceased — successor of original grantor did not by suspending covenant for twenty-one years as to lot held by one of defendants abandon covenant — suspension of covenant not effective without consent of plaintiffs also — covenant was not abandoned — covenant not rendered ineffective by change in locality from residential to business district — reformation of deed by predecessor in title to lot now owned by one of defendants did not affect covenant.

The covenants contained in a deed to the plaintiffs' predecessor in title, which prohibited the construction of buildings on two lots in the rear of other property situated on Sixth avenue between Forty-second and Forty-third streets, New York city, which belonged to the grantor in the deed, the said two lots being also in the rear of property which belonged to the plaintiffs' predecessor in title, which property was situated on Forty-second street, were not abandoned and rendered ineffective, since it appears that plaintiffs' predecessor in title conveyed one of said inside lots subject to the same restrictions and said lot was subsequently acquired by one of the defendants through mesne conveyances; that in 1902 the then owners of the two lots in question having erected thereon structures in violation of the covenant were compelled to remove the same, one upon demand made by the owners of the dominant estate and the other by a judgment of the courts; that the successor in title of the property situated on Sixth avenue which belonged to the original grantor consented to a suspension of the covenant for twenty-one years in so far as it related to the lot now owned by one of the

defendants, but the plaintiffs, who owned the other lot and whose predecessor in title had restricted the lot owned by the defendant, did not consent to the suspension of the covenant.

The original purpose for which the covenant was created has not ceased to exist and the covenant cannot be said to have been abandoned on that ground.

The contention by the plaintiffs that there is such an element of mutuality in the covenant in question as imposes upon the successors in title of the original grantor an obligation to preserve the restrictive covenant as to the lot with reference to which they agreed to suspend the operation of the covenant or in default of so doing to lose their right to enforce the covenant as to the lot now owned by the plaintiffs cannot be sustained, for the original grant of the two lots was not a division of a tract of land into lots, but a sale of specific lots charged with the easement which implies no mutuality of obligation upon the part of the seller, but only an obligation imposed on the servient estate, and there was no general scheme of improvement or restriction involving the whole block, and furthermore, the consent to the suspension of the covenant as to the lot owned by one of the defendants did not purport to permanently abolish it.

The consent to suspend the covenant as to the lot owned by one of the defendants for a specified period could not become legally operative without a similar consent being obtained from the plaintiffs, since they held a similar dominant estate created by their predecessor in title over the lot now owned by one of the defendants.

There is nothing in the entire transaction relating to the suspension of the covenant which approaches the clear, definite and unequivocal acts declaratory of a clear purpose to permanently abandon and give up the easement.

The change in character of the neighborhood in question from a residential district to one used for business purposes does not constitute a reason for holding that the covenant is no longer in force, since it appears that the character of the district changed many years ago and was at the time when the covenant was specially enforced in the courts in 1906, a district devoted entirely to business, at which time it was not considered that the covenant was unenforcible because of changed conditions.

A judgment of the Supreme Court in an action to reform the deed given by the predecessor in title of the lot now held by one of the defendants on the ground that the description in the deed by mistake covered the lot now owned by the plaintiffs instead of the lot which the said defendant now owns, did not affect the covenant contained in said deed, which restrained the grantee from erecting buildings on the lot.

APPEAL by the defendants, Unity Fee Company, Inc., and another, from a declaratory judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 7th day of April, 1923, upon the decision of the court rendered after trial at the New York Special Term.

Appeal by the defendants, St. Regis Restaurant, Inc., and others, from so much of said judgment as orders, adjudges and decrees that in the event an appeal be taken from such judgment and it be ultimately determined that the covenant contained in the deed made by Robert Burns and another to John Ridley is still binding upon the plaintiffs' premises, then that the said defendants be

ordered and directed to remove and be restrained and enjoined from further maintaining any building on the premises.

*Harold Swain* and *Frank M. Tichenor* [*Harold Swain* of counsel; *Arthur H. Indell* and *Frank M. Tichenor* with him on the ·brief], for the appellants Unity Fee Company, Inc., and Dry Dock Savings Institution.

*Irving Katz* [*Abraham P. Wilkes* of counsel], for the appellant Caggle Realty Co., Inc.

*Coleman, Stern & Ellenwood* [*John Burlinson Coleman* of counsel], for the respondents.

DOWLING, J.:

This action is brought under the provisions of section 473 of the Civil Practice Act and rules 210–214 of the Rules of Civil Practice for a judgment declaring the rights of the various parties under a certain restrictive covenant affecting a portion of the plaintiffs' premises. From a judgment in their favor this appeal is taken.

The situation of the various parcels of property involved in the controversy herein can best be understood by reference to the diagram on page 433.

Robert Burns, in 1857, became the owner of parcels A, D and E. The property was on the west side of Sixth avenue, about seventy-five feet north of Forty-second street, in the city and county of New York. It was the usual city lot, with a frontage of twenty-five feet on Sixth avenue and a depth of one hundred feet. On the property was a two-story and basement building, the basement being subsequently used by Burns as an oyster saloon, with dwellings above. The property as bought by Burns was unrestricted.

In 1859 Burns conveyed to John Ridley (the predecessor in title of plaintiffs) a plot of land comprising parcels D and E. The deed contained the following covenant: " And the said party of the second part [Ridley] hereby covenants for himself his heirs and assigns that he and they will not erect any building upon any portion of the premises hereby conveyed but will leave the same free and open unless the written consent of the parties of the first part [Burns and his wife] or their assigns be first had and obtained." Thus parcel A became the dominant estate and parcels D and E the servient estate. The important facts as to the transactions involving the above-described parcels of property thereafter are not in dispute. They are as follows: At the time of the conveyance a high board fence ran along the division line between parcels A and D, parcels D and E then being the greater portion of the back yard of Burns' premises.

WEST 43 D. STREET

42 ND. STREET WEST

A few days before taking this conveyance from Burns, John Ridley became the owner of parcel B, then improved with a private house. The premises were known as No. 105 West Forty-second street. These premises he bought from James M. Coburn. After the purchase Ridley used the premises as a residence. The descriptions in the deeds will show that parcels B and D were not contiguous, there being a one-inch strip between them. This arose because the Burns plot was seventy-five feet five inches north of Forty-second street, whereas the depth of B, the plot purchased by Ridley, was only seventy-five feet four inches.

In 1861 Ridley bought parcel H.

In 1865 Ridley sold to Louis Bressler one-half of the plot which he had acquired from Burns. It was his intention to convey E. The deed, however, through an error of description, as was later held in a suit brought to reform it, described parcel D. Bressler, at the time of this conveyance, was the owner of parcel C, having acquired title to the latter parcel in 1863.

It was undoubtedly Bressler's intention to increase the depth of his lot and, had it not been for the one inch of intervening land, heretofore referred to, the deed from Ridley, had the description been accurate, would have accomplished this purpose.

When Ridley conveyed this parcel E to Bressler (by the erroneous description) he imposed, in his own behalf, exactly the same covenant which had been imposed upon him by Burns when he acquired the property from Burns. This covenant was that neither the purchaser nor his heirs and assigns would erect any building upon any portion of the premises conveyed, but would leave the same free and open unless the written consent of the grantor, or his assigns, be first had and obtained. After Ridley had thus divided his ownership of the rear plot purchased from Burns, a division fence was put up between D and E.

In August, 1865, a few months after his conveyance to Bressler, Ridley died. By his will he created a trust for the benefit of his children and their issue.

In 1881 the owner of what was left of the Burns' plot (parcel A) altered the building by adding two stories (making it four stories and basement in all) and by erecting a one-story and basement extension in the rear of the building. The effect of this extension was to make the store deeper.

In 1883 the Ridley heirs procured a conveyance of so much of the one-inch strip heretofore referred to, as lay between parcels B and D. The balance of the one-inch strip, that lying between parcels C and E, was conveyed in 1903 by de Peyster to Walter J. Salomon.

As has been said, it had been the intention of the parties to the deed from Ridley to Bressler that Ridley should convey to Bressler parcel E. Instead of that, the description in the deed was of D. This mistake of description formed the basis of an action brought by Louis Bressler against the Ridley heirs in 1884. The mistake was clearly proved and the judgment reformed the deed accordingly, directing an interchange of releases in accordance with the intent of the original parties.

These releases took the form of bargain and sale deeds. The former of these deeds, the one to Bressler, did not contain any reference to the covenant which was imposed by Ridley when he made his original conveyance to Bressler. By them title to parcel D remained in the Ridley heirs, while that to parcel·E vested in Bressler.

In 1902 General John Watts de Peyster had become the owner of parcel A, the property formerly owned by Burns, and also the adjoining plot on the northwest corner of Sixth avenue and Forty-second street, with a frontage of seventy-five feet five inches on Sixth avenue and sixty feet on Forty-second street. He then leased this entire plot to Walter J. Salomon by a lease dated January 23, 1902. The term of the lease was twenty-five years with a privilege for renewals of successive terms of twenty-five and twenty-four years, the rent to be fixed by arbitration.

The covenant not to build on parcels D and E without the consent of the owner of parcel A, was considered beneficial to the ownership of the latter property. A few months after the lease to Salomon, he and General de Peyster started an action against William Sperb, Jr., to enforce this covenant. The action was started after it had been brought to the attention of de Peyster and Salomon that certain structures had been erected on parcels D and E without the consent of the owner of parcel A. On parcel D there was a wooden shed of substantial size. On parcel E there was a one-story brick building. Before beginning the action demands were made upon William Sperb, Jr., who was then the owner of parcel E, and upon Jeremiah Ridley and other heirs of John Ridley, who were then the owners of parcel D. Jeremiah Ridley, who was in charge for the Ridley heirs, acquiesced in this demand and removed the shed. Sperb, however, failed to remove his brick building and the action followed. After a trial at Special Term there was judgment for the plaintiff which was affirmed in the Appellate Division and in the Court of Appeals (Salomon v. Sperb, 120 App. Div. 875; 193 N. Y. 624).

During the pendency of the action just referred to, Walter J. Salomon (whose name is now Walter J. Salmon), for a consideration of $350,000, bought from General de Peyster the property which

he then held under lease. This deed also conveyed to Salomon the one-inch strip heretofore referred to, immediately adjoining parcel E on the south. The action was then discontinued as to de Peyster and continued to final conclusion by Salomon.

Following the decision of the Court of Appeals in the action of *Salomon* v. *Sperb*, the brick building on parcel E was removed.

The defendant Unity Fee Company, Inc., a corporation, of which Salmon is the president and a large stockholder, succeeded to the ownership of the property conveyed to Salomon by General de Peyster.

In 1919 a transaction occurred with reference to parcel E which formed the basis of the plaintiffs' claim that the covenant not to build on D and E is no longer enforcible. By this time the ownership of parcels B, D and H had vested in the plaintiffs through deeds from the Ridley heirs. These conveyances cover also the one-inch strip immediately south of parcel D. At that time the St. Regis Restaurant, Inc., desired to lease parcels C, E and G and to make possible improvements on E which would connect the houses on C and G. The purpose was to conduct a restaurant which would run from Forty-second street to Forty-third street, with entrances on both streets. C and E, except for the one-inch strip between these two parcels, were then vested in the Caggle Realty Co., Inc., as owner. These parcels had come into the ownership of this corporation through successive deeds from Bressler to Sperb. Bressler had bought from Ridley with the Burns covenant on the property as an incumbrance. Ridley had himself imposed the same covenant for his own benefit. Sperb had been forced by the action of *Salomon* v. *Sperb* to respect the covenant.

Parcel G, at the time of the advent of the St. Regis Restaurant, Inc., into the situation, was owned by Cecelia P. Wuerz. Title to the one-inch strip immediately south of parcel E was then outstanding in the Unity Fee Company, Inc., which then owned parcel A. The proposed building on E, the desired connecting link between C and G, could not be built without the consent of the Unity Fee Company, Inc., and without obtaining a lease of the one-inch strip in its ownership.

The transaction, then, took this form: A twenty-one-year lease to the St. Regis Restaurant, Inc., was obtained from the Caggle Realty Co., Inc., for parcels C and E. This lease expressly excepted the one-inch strip and was expressly subject to the covenant not to build on E. Another lease for a term of five years was obtained from Cecelia P. Wuerz covering parcel G. An instrument was obtained from the Unity Fee Company, Inc., the purpose of which was to lease, for a term of twenty-one years, the one-inch strip

immediately south of E, and also throughout the term to transfer to the lessee the rights and privileges which the lessor had in E by virtue of its power to decide whether the building should be erected upon it. The rent was a graduated rental, ranging from $2,000 to $3,000 a year. It was expressly provided that the lessee might erect upon the premises (parcel E and the one-inch strip) a building of no greater height above the street level than twenty-five feet. It was further provided that the privilege to erect and maintain the building was limited to the term of the lease.

By an instrument of contemporaneous date the Caggle Realty Co., Inc., the owner of C and E (except for the one-inch strip), agreed with the St. Regis Restaurant, Inc. (the lessee), that at the end of the twenty-one-year term the building which would then be standing on E would be removed by the Caggle Realty Co., Inc., the landlord, at the expense of the tenant, the agreement being that the tenant might enter after the expiration of this lease, for the purpose of removing the building in case the landlord failed to remove it. On the same day (October 21, 1919) the St. Regis Restaurant, Inc., sold to the Unity Fee Company, Inc., all its right, title and interest under the agreement just mentioned.

After the St. Regis Restaurant, Inc., had, by the instrument just referred to, assured itself of its right to utilize parcel E for building, it sublet the entire tract, parcels C, E and G, including the one-inch strip, to the Vacuum Cleaner Specialty Co., Inc. The latter company, the sublessee, erected a one-story brick building on parcel E, covering nearly the entire plot. This was in 1921 and the building was used as a kitchen for the restaurant which was conducted on the premises.

The present action was brought to obtain a declaratory judgment to the effect that the covenant was no longer operative. It was claimed that it had been extinguished and abandoned. It was claimed that because the neighborhood had changed to a business one, there was no further need of the covenant and that it was a hardship to plaintiffs not to be allowed to build. As alternative relief the plaintiffs asked that in the event the court should find that the covenant was still operative, then that there should be judgment holding the erection and maintenance of the building on parcel E to be in violation of the covenant contained in the deed from Ridley to Bressler, and that the building be ordered removed.

The learned justice at Special Term, at the conclusion of the trial, ordered judgment for the plaintiffs. In the oral opinion which he then rendered he held that the consent of the plaintiffs was a prerequisite to the construction of the building upon parcel E; that the plaintiffs were entitled to a mandatory injunction directing

the removal of the building on the authority of the judgment in *Salomon* v. *Sperb,* and that the right of the Unity Fee Company, Inc., to control over plots D and E be ended. His expressed reason was that the original purpose which inspired its creation no longer existed. He further declared that " It is also evident that the covenant has become solely a subject of barter rather than a desire to preserve it for light and air. And finally, the manner in which the building on lot 'A' was constructed in the rear is strongly persuasive that there is no longer need of its continuance."

The judgment from which the present appeal is taken decreed that the covenant in the deed from Burns to Ridley had been abandoned, extinguished and waived, and that it was not binding on plaintiffs or the premises known as parcel D, belonging to them; that defendants and all claiming under them be forever barred from any claim to any interest in or easement upon said premises; that defendants and all claiming under them are not and shall not be entitled to forbid, interfere with or prevent the construction of any building or other erection on said premises; and that defendants and all claiming under them are not and shall not be entitled by any action or proceeding in equity to restrain the plaintiffs from constructing, erecting and maintaining any building or erection on said premises. It further provides: " That in the event an appeal be taken from the judgment herein and it be ultimately determined that the said covenant contained in said deed made by Robert Burns to John Ridley has not been abandoned, extinguished and waived and is still binding on the plaintiffs' said premises, then that the defendants, Vacuum Cleaner Specialty Company, Inc., St. Regis Restaurant, Inc., and Caggle Realty Co., Inc., be ordered and directed to remove and restrained and enjoined from further maintaining any building on the premises shown and designated " as parcel E, and that all of the defendants herein be enjoined and restrained from in any wise forbidding, stopping or interfering with the removal of said building.

The defendants Unity Fee Company, Inc., and Dry Dock Savings Institution appeal from the entire judgment herein. The other defendants appeal from the part of the judgment giving the alternative relief.

The judgment appealed from proceeded upon the theory that the original purpose for which the covenant was created had ceased to exist; that the covenant had become a subject of barter rather than a desire to preserve it for light and air; and that the manner in which the building on lot A was constructed in the rear " is strongly persuasive that there is no longer need of its continuance." I am of the opinion that none of these theories is well founded.

Plaintiffs contend that there is such an element of mutuality in the covenant in question as imposes on the successors in title of Burns an obligation to preserve the restrictive covenant as to plot E, or in default of so doing to lose their right to enforce the covenant as to plot D. A Michigan case is cited (*Jenks* v. *Pawlowski*, 98 Mich. 110), which only suggests a query as to whether there is no mutuality in such agreements, and then holds that an owner has no right to sell an adjoining lot without restrictions, thereby diminishing the value of his former grantee's property, which he had conveyed to him with a covenant against its use for the sale of intoxicating liquors therein. Plaintiffs also cite Berry on " Restrictions on the Use of Real Property " (at p. 492), as follows: "Where the owner of a tract of land sells it off in lots, with restrictions on the use thereof, he will lose his right in equity to enforce such restrictions against one grantee if he knowingly permits other grantees to violate the same restriction, the effect of which violation is to abrogate the purpose of the restriction and alter the general scheme intended to be conserved by it. *Ocean City Association* v. *Chalfant*, 65 N. J. Eq. 156, 55 Atl. 801, 1 Am. & Eng. Anno. Cas. 601 (1903)." But the answer to this contention is that it has no application to the present case because: (a) This is not a division of a tract of land into lots, but a sale of a specific lot, charged with an easement, which implies no mutality of obligation upon the part of the seller, but only an obligation imposed on the servient estate; (b) parcel D was not sold by the successors in interest of Burns, but by the predecessors in title of the plaintiffs; (c) there was no general scheme of improvement or restriction involving the whole block, or any part thereof, save the parcel D, E, charged with a restriction solely for the benefit of parcel A, without any concern about its effect on the rest of the block, its purpose being to afford continuous, uninterrupted light and air for parcel A; (d) in any event, the instruments between Caggle Realty Company, Inc., as lessor, and St. Regis Restaurant, Inc., as lessee, and Unity Fee Company, Inc., as lessor, and the same lessee, not only did not permanently abolish the restrictive covenant as to parcel E, but only suspended it for the twenty-one-year term of the lease, and then provided for the removal of the building, but the suspension could have no force or effect without the similar consent of the owners of parcel D, who still controlled its use by reason of the similar restrictive covenant in their favor, imposed when parcel E was sold.

A reasonable, useful, valuable and long-existent covenant affecting land is not to be lightly or arbitrarily disregarded or set aside. As was said by Mr. Justice McAvoy in *Mittnacht* v. *Montana*

(205 App. Div. 643): " An easement of way created by grant is not extinguished in such facile modes as are those which arise by prescription, user or necessity." And again (at p. 646): " The rule as to easements acquired by deed is: ' One who acquires title by deed to an easement appurtenant to land has the same right of property therein as he has to the land. He may insist upon its use whenever occasion requires * * *. The right conveyed can be defeated only by showing that it has been waived or lost in some of the ways recognized by law.' (*Haight* v. *Littlefield,* 147 N. Y. 338, 343, 344.)" And again (at p. 647): " The Court of Appeals is in accord with this declaration of the law of abandonment of easement. Judge EARL of that court says: ' An easement may be abandoned by unequivocal acts showing a clear intention to abandon, or by mere non-user, if continued for a long time. The mere use of the easement for a purpose not authorized, the excessive use or misuse, or the temporary abandonment thereof, are not of themselves sufficient to constitute an abandonment. * * * The acts claimed to constitute the abandonment of an easement must show the destruction thereof, or that its legitimate use has been rendered impossible by some act of the owner thereof, or some other unequivocal act showing an intention to permanently abandon and give up the easement.' (*Roby* v. *N. Y. C. & H. R. R. R. Co.,* 142 N. Y. 176, 181.)

" The acts asserted by defendant to constitute a definite, unequivocal intent to cease forever any use or interest in the alleyway, fall far short of the proof necessary to establish such intent as these rules demonstrate."

The rules thus enunciated are equally applicable to the covenant in question. It was created by grant, and its enforcement was uniformly insisted upon by the owners of the dominant estate, including an action prosecuted to compel the removal of the building on parcel E, and the removal of the shed on parcel D on demand. Down to 1919 when the lease to the St. Regis restaurant was made, there could not even be a contention made that anything had been done to the prejudice of the covenant by the owner of the dominant estate. That lease did no more than suspend the operation of the covenant as to parcel E for a temporary period — twenty-one years — and to a limited extent — a building twenty-five feet high. This permission to erect such a building for the fixed period and then to remove it, leaving the covenant again operative, in no event could have become legally operative without a similar consent being obtained from the owners of parcel D, by virtue of their holding a similar dominant estate created by their predecessor's deed passing title to parcel E and this never was in fact obtained.

I can find nothing in this transaction which approaches the clear, definite and unequivocal acts declaratory of a clear purpose to permanently abandon and give up the easement, required by the cases cited.

Nor does the change in character of the neighborhood in question from a residential district to one used for business purposes, constitute a reason for holding such a covenant as this to be no longer effective. In the present case an expert testified that the value of parcel A with the covenant in force was $60,000 more than it would be without the benefit of that covenant. It is self-evident that the value of the covenant to the owners of the dominant estate must be greater where that property is in use for business purposes, and where the servient estate would be in even greater demand for the same purpose, if it could be used as a link between plaintiffs' parcels B and H, and where the restricted use of parcel D would now be of greater value to the owner of parcel A, because of the greater need for, and value of, an unrestricted access of light and air to the tenants in a business building than in a private house. Moreover, when the covenant was judicially determined to be in full force and effect, and specific performance thereof was decreed by directing the removal of the building erected on parcel E, the neighborhood of Forty-second street and Sixth avenue was already completely devoted to business purposes. I have examined the record of the trial of the action of *Salomon* v. *Sperb*, hereinbefore referred to, which was tried in 1906. The witness Samuel Goldsticker there testified that the character of the neighborhood of Forty-second street and Sixth avenue was then " all business," and that it was being improved by the erection of very tall buildings, specifying the Times Building, the Hippodrome and the Knickerbocker Hotel, and that such improvements had been going on for four or five years; though no such tall buildings had been erected in the particular block in which the property in question was located. On cross-examination he testified that the property on the north side of Forty-second street, from Sixth avenue to the middle of the block, and the whole west side of Sixth avenue, from Forty-second street to Forty-third street, was entirely business. He further testified on cross-examination that the character of the neighborhood at Forty-second street and Sixth avenue had completely changed within twenty years, by the elimination of the residential use and the substitution of business, so that when the restrictive covenant was upheld in 1902, the court had undisputed testimony before it that the character of the neighborhood had completely changed to that of a business center, and still upheld its validity. The brief for respondent on the appeal to this court

stated that "the property in question is situate in one of the principal and most congested business centres of the city of New York. It is so valuable that its worth is measured by the square foot rather than by the lot value." This condition was of course still existent in an even greater degree when the judgment sustaining the validity of the covenant and directing the taking down of the building erected on parcel E in violation thereof was affirmed by this court in 1907 (120 App. Div. 875) and by the Court of Appeals in 1908 (193 N. Y. 624). And this was the condition existent as well when plaintiffs' predecessor in title recognized the enforcibility of the covenant against his building upon plot D, when he removed, upon demand of the owner of plot A, the shed he had erected on his land in violation of the restriction.

I am of the opinion that the original grant by which this restriction on the use of the servient tenement was imposed has never been affected by any subsequent act or acts of the parties, and that the restriction as to the use of parcel D is still in full force and effect for the benefit of the owners of parcel A, and may be enforced by it, either by injunction or otherwise, as it deems best.

This leads as well to the conclusion that though the owner of parcel A has temporarily and for a limited extent suspended the operation of the restriction as to parcel E, the owners of parcel B (the plaintiffs) have never acquiesced therein nor assented thereto, and that they have the same right to enforce the restriction created by their predecessors in title against parcel E, and consequently have the right to cause the removal of the building erected thereon in violation of their rights.

The judgment in the Supreme Court action of *Bressler* v. *Crane* simply reformed the description contained in the deed from Ridley to Bressler, and left the rest of the deed unaffected, including the restrictive covenant against building on the premises conveyed.

So much of the findings and judgment appealed from as hold that the covenant in question as to parcel D has been abandoned, extinguished and waived and is not binding on plaintiffs, including subdivisions a, b, c and d of the judgment and the findings relevant thereto and on which it was based, should be reversed, and proper findings and judgment made upholding the validity of said covenant. So much of the findings and judgment as uphold plaintiffs' right to enforce the covenant as against parcel E should be modified by striking out so much as is in the alternative providing what shall be determined in case of an appeal, and making same conform in all respects to the conclusion contained in the foregoing sentence. Costs of trial and costs and disbursements of appeal should be granted to the defendants, appellants, Unity Fee Company, Inc.,

and Dry Dock Savings Institution against the plaintiffs. Costs of trial and costs and disbursements of appeal should be granted to plaintiffs, respondents, against the defendant, appellant, Caggle Realty Co., Inc.

Let an order embracing findings in accordance herewith be settled on notice.

CLARKE, P. J., MERRELL and MARTIN, JJ., concur.

Judgment modified as indicated in opinion and in other respects reversed, with costs of trial and of this appeal to defendants Unity Fee Company, Inc., and Dry Dock Savings Institution against plaintiffs, and to plaintiffs against defendant Caggle Realty Co., Inc. Order embracing findings to be settled on notice.