John C. Wheeleb,
Off. Ref. In this action for declaratory judgment the material facts are not in dispute. The residence property owned and' occupied by the defendant Edward E. Burns consists of a valuable country dwelling, with extensive acreage, having a frontage of 800 feet on the north side of the Sodus-Alton State Highway No. 104, in the town of Sodus. Across the highway and some 400 feet to the west is a tract of some 30 acres owned by the corporate defendant, Burns Farms, Inc., which corporation is owned and controlled by the defendant Edward E. Burns.
Prior to October, 1953, Mr. Burns was interviewed by one Albert Le Blanc and officers of the New York State police concerning the proposed sale of a portion of the 30-acre tract, to be used for the construction of a barracks or substation for the New York State police. They were informed by defendants that this property was not for sale, but after further negotiations *129 defendants agreed to sell if certain restrictions as to the use of the property could be agreed upon.
Thereafter, on October 6, 1953, the defendant Burns Farms, Inc. conveyed to Helen Le Blanc the property described in the complaint, having a frontage on the south side of Route 104 of 110.87 feet and a maximum depth of 180 feet, containing approximately two thirds of an acre, the purchase price being $600. The deed contained the following restrictive covenant: ‘ ‘ This conveyance is also made subject to the following covenants and restrictions; that any structure erected upon the premises shall be used for residential purposes only, except out-buildings used in connection therewith. Any other use than as above stated shall be approved in writing by the Party of the First Part or its successors and assigns. Residential use shall not be deemed to preclude use of the premises for State Troopers Barracks or Headquarters. ’ ’
The grantee, Mrs. Le Blanc, erected a building on the land, designed to be used by the New York State troopers as a substation. To finance the building costs Le Blanc obtained loans from the plaintiff, Baldwinsville Federal Savings and Loan Association, aggregating $20,000, secured by two mortgages on the property conveyed. The building was rented to the State of New York on a month to month basis and was occupied by the State Police from April, 1954 to August, 1955, upon which latter date the tenancy was terminated by the State. Thereafter, the mortgages being in default, plaintiff foreclosed and became the owner of the subject property on the foreclosure sale.
In this action for declaratory judgment the plaintiff is seeking to extricate itself from the obvious difficulties arising out of the restrictive covenant of which it had notice, both actual and constructive, prior to the respective dates of its mortgages. Since becoming the owner on October 14, 1955, plaintiff has been unable to find a purchaser due to the restriction and the fact that defendants have on occasions called it to the attention of prospective buyers.
It is to be observed that this is not the usual case in which a party is seeking the aid of equity to enforce a restrictive covenant by enjoining a prohibited use. No violation of the covenant has occurred, no other use has been proposed, nor have the defendants, or either of them, sought the aid of the court to restrain plaintiff in its use of the premises. Moreover, it clearly appears that there has been no substantial change in the character of this particular neighborhood.
It is plaintiff’s contention that due to the conditions existing at the time the restriction was imposed the covenant was without *130 vitality and unenforcible from its inception and, therefore, it is seeking a declaration to the effect that the premises are completely unrestricted as to use and “ not subject to any purported restrictions thereon.”
In support of its contention plaintiff relies upon the following factors:
(a) That the general area in this vicinity on both sides of the State highway was and is now largely commercial, consisting of restaurants, gas stations, a drive-in theatre, motels and other small businesses, intermingled with residence properties — a total of 81 properties, of which 45 are commercial and 36 are residential;
(b) That defendant, knowing the building being erected was not suitable for residential purposes, acquiesced in its construction and is, therefore, estopped from enforcing the restriction ;
(c) That plaintiff has large sums of money invested in the property, which it claims cannot be converted into a residence without further substantial expenditures;
(d) That the covenant itself is ineffective and unenforcible for the reason that the defendant grantor and its assigns are given power to modify or to approve other uses; and
(e) That the enforcement of the,restriction would bear heavily on plaintiff without materially benefitting defendants.
It is to be noted that plaintiff is not claiming that the restriction on its face is invalid, nor could it successfully do so. “ [T]he parties had the right to determine for themselves in what way and for what purposes their lands should be occupied irrespective of pecuniary gain or loss, or the effect on the market value of the lots.” (Trustees of Columbia Coll. v. Lynch, 70 N. Y. 440, 453.) No undue restrictions have here been imposed. Like restrictions “ for the benefit of adjacent lands, having respect to light, air, ornamentation, or the exclusion of occupations which would render the entire property unsuitable for the purposes to which it could be most advantageously devoted, have been sustained, and have never been regarded as impolitic.” (Trustees of Columbia Coll. v. Lynch, p. 446, supra.)
Inasmuch as there has been no change in the character of the neighborhood, the real controversy is whether the restrictive covenant was enforcible under the conditions prevailing at the time it was imposed — not whether equity might some time in the future enforce it under changed conditions, including a nonconforming use not presently before this court.
As I view it, the plaintiff’s contentions are without merit. The proof shows that this is a somewhat sparsely settled suburban community, consisting of both residential and commercial *131 property. In order to protect his home and to prevent the locality from being further commercialized, Mr. Burns purchased, in the name of his wholly-owned corporation, the 30-acre tract, with the express intention of restricting it to residential use, but permitting on the subject lot the erection of the barracks for the State police. No unfair advantage was taken by the defendants. All parties were fully aware of the character of the community. There was no obligation on defendants, or even any right, to inspect or interfere with the design or specifications of the permitted building being erected and, hence, there could be no equitable estoppel. The defendant Burns had specifically called to the attention of his grantee that difficulty in obtaining a loan might arise due to the restriction but he was assured that arrangements had been made.
Defendants continue to own land in the immediate vicinity, including the remainder of the 30-acre tract contiguous to the subject lot. Plaintiff' predicates its argument on the long and well-recognized line of cases in which courts of equity have refused to enforce restrictive covenants which through no fault of the parties have been, for ail practical purposes, defeated by the lapse of time (e.g., Trustees of Columbia Coll. v. Thacher, 87 N. Y. 311; Trustees of Columbia Coll. v. Lynch, supra; Forstmann v. Joray Holding Co., 244 N. Y. 22; McClure v. Leaycraft, 183 N. Y. 36). The rationale of these cases is clearly stated in the McClure opinion (p. 41), as follows: “ It [court of equity] cannot set aside a binding contract, but when the effect would be inequitable owing to facts arising after the date of the agreement and not within the contemplation of the parties at the time it was made, it refuses to enforce the contract and remands the party complaining to his remedy at law through the recovery of damages.” (Emphasis supplied.)
In none of the cases cited has the court refused enforcement except when there has been a substantial change in the character of the neighborhood or where the covenantee has no property in the immediate vicinity and, therefore, no present interest in the preservation of the restriction. (Rector, etc. St. Stephen’s Church v. Rector, etc. of Church of Transfiguration, 201 N. Y. 1.) The fact that defendant’s remaining land in this vicinity is not restricted is immaterial. The covenant imposes no such restriction upon the defendant grantor, nor may any inference of such be drawn in the absence of other evidence. (Bristol v. Woodward, 251 N. Y. 275, 285.) This transaction was not a division of a tract of land into lots subject to uniform restrictions, but a sale of a single lot charged with a restriction, which implies no mutuality of obligation upon the part of the grantor, but only *132 an obligation imposed upon the servient estate. (Finch v. Unity Fee Co., 211 App. Div. 430.)
Likewise, the authority given to the defendant grantor to approve of “ any other use ” does not deprive the grantor of its right to enforce the restriction. Here we have the type of restriction in which the grantor exacts the covenant from the grantee for the protection and benefit of the grantor’s contiguous or neighboring lands. In such a case the grantor may enforce the covenants but the grantee cannot. (Korn v. Campbell, 192 N. Y. 490; Bristol v. Woodward, supra.) Inasmuch as-the defendant grantor has the exclusive power to enforce the restriction, he also has the power to modify it. (Rose v. Jasima Realty Co., 218 App. Div. 646; One & Three South William St. Bldg. Corp. v. Gardens Corp., 232 App. Div. 58, affd. 261 N. Y. 575.)
It is also unimportant that the covenant does not specifically provide that it shall “ run with the land,” inasmuch as plaintiff took title with notice of the restriction. (Trustees of Columbia Coll. v. Lynch, supra.) “ The basis of the modern rules rests upon the equitable doctrine of notice, that he who takes land with notice of a restriction upon it, will not in equity and good conscience be permitted to act in violation of the terms of these restrictions.” (Clark on Covenants and Interests Running with Land [2d ed.], p. 170.)
In my opinion this particular structure could be converted to residential use without unreasonable expense. But, if plaintiff feels that enforcement of the restriction would bear heavily upon it, the fault is in no small part due to its own failure to recognize the effect of the restriction and to give proper consideration to the fact that the only available tenant might at any time terminate the tenancy.
In this action for equitable relief the plaintiff is demanding far-reaching results. If this restriction should be declared unenforcible upon the proof now before the court, it would follow that defendants would be without remedy either at law for damages or in equity to enjoin in the future any kind of obnoxious use. While an action for declaratory judgment may be proper to relieve a party of restrictive covenants under certain conditions, such relief is more drastic than a judgment merely denying equitable relief by way of injunction and “ should be granted with caution, and only when the motivating considerations are not only ample, but so settled and lasting that the purpose of the original restriction has been permanently frustrated.” (26 C. J. S., Declaratory Judgments, § 72.)
*133 For the reasons herein stated, I find the subject restriction to be valid and, upon the proof now before the court, enforcible, and that the use of the premises is restricted accordingly. The judgment to be entered herein is without prejudice to such further action as the parties may be advised in the event that a specific nonconforming use be established or proposed.
Appropriate findings and judgment may be submitted. No costs to either party.