JULIUS FORSTMANN et al., Respondents, v. JORAY HOLDING COMPANY, INC., et al., Appellants.

Appeal — real property — covenants — equity — injunction — reversal of final judgment by Appellate Division and direction of judgment on new findings — Court of Appeals may review facts found by Appellate Division and their decision thereon — restrictive covenant in deed of land — equitable relief refused as matter of law where facts show that injunction would be unjust — injunction withheld where it appears that injury is not serious and to restrain acts complained of would subject defendant to great inconvenience and loss — equity will not order destruction of building, where it would neither add to value of plaintiff's property nor make it more desirable, and term of restrictive covenant is nearly ended.

1. Where the Appellate Division reverses a final judgment, makes new findings and directs judgment thereon the Court of Appeals is no longer limited to a review of questions of law but must review the facts found by the Appellate Division and their decision thereon. (Civ. Pr. Act, § 589, subd. 2, amd. L. 1926, ch. 725.)

2. In an action to obtain a mandatory injunction requiring the removal of a building, because of a restrictive covenant contained in a

prior deed of the premises, equitable relief is not within the absolute discretion of the Supreme Court but must be refused as matter of law when the facts found compel the conclusion that an injunction would be unjust.

3. The threat of restraint implied in restrictive covenants is not penal in its character. To violate them without harming any one in so doing gives rise to no cause of action. Equity takes jurisdiction in such cases to prevent irreparable injury to comfort and enjoyment although without damage but not to protect a mere preference. An injunction will, therefore, be withheld as oppressive when it appears that the injury is not serious or substantial and that to restrain the acts complained of would subject the other party to great inconvenience and loss.

4. In an action to enforce a covenant restricting the erection of any building other than a one-family dwelling house on the premises in suit, where it appears that the life of the covenant has nearly expired and the enforcement of it cannot restore the neighborhood to its former condition by making it desirable for private residences; that the block has no special advantages for residence purposes; that the value of defendant's property for residence purposes is relatively small and the destruction of its building will inflict a loss on defendants and neither add to the value of plaintiff's property nor make it more desirable for residence purposes; and where it appears, from consideration of all the facts and circumstances, that the building has been erected not in defiance of plaintiff's rights but with good reason to doubt that equity would enforce such rights, even though defendants might, in the exercise of discretion, properly have been enjoined from proceeding with a proposed building, equity will not order the destruction of the erected structure, especially when it may be lawfully restored in two years at expiration of the term of the covenant.

*Forstmann* v. *Joray Holding Co.*, 216 App. Div. 135, reversed.

(Argued October 11, 1926; decided November 30, 1926.)

APPEAL from a judgment, entered April 9, 1926, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of defendant entered upon a dismissal of the complaint on the merits by the court on trial at Special Term and directing judgment in favor of plaintiff upon new findings.

*Nathan L. Miller, John Burlinson Coleman, H. Bartow Farr, Abram J. Rose* and *William K. Hartpence* for appellants. The Court of Appeals now has jurisdiction to review the new findings of fact made by the Appellate Division. (Const. N. Y. art. 6, § 7; Laws of 1926, ch. 725; Civ. Pr. Act, § 589, subd. 2.) In view of the changed conditions, equity will not enforce by mandatory injunction the restrictive covenant limiting the use of the defendants' property to a dwelling house for a single family, especially where the covenant has only two years to run. (*Trustees of Columbia College* v. *Thacher,* 87 N. Y. 311; *McClure* v. *Leaycraft,* 183 N. Y. 36; *Batchelor* v. *Hinkle,* 210 N. Y. 243; *Schefer* v. *Ball,* 53 Misc. Rep. 448; 120 App. Div. 880; 192 N. Y. 589; *Bull* v. *Burton,* 227 N. Y. 101; *McCann* v. *Chasm Power Co.,* 211 N. Y. 301.)

*Julius Henry Cohen* and *Theodore B. Richter* for respondents. The restriction is part of a general building plan. The courts uphold and enforce such restrictions in order to carry out the evident purpose of the parties. (*Korn* v. *Campbell,* 192 N. Y. 490; *McDougall* v. *Schneider,* 134 App. Div. 208; *Silberman* v. *Uhrlaub,* 116 App. Div. 869; *Cromwell* v. *American Bible Society,* 202 App. Div. 625.) The restricted area has been confined to residences in accordance with the restriction. The defendants will not be permitted to destroy the residential character of the block by business invasion. (*Batchelor* v. *Hinkle,* 210 N. Y. 243; *Pagenstecher* v. *Carlson,* 146 App. Div. 738; *Rowland* v. *Miller,* 139 N. Y. 93; *Todd* v. *North Avenue Holding Corp.,* 121 Misc. Rep. 301; 208 App. Div. 854; *Merrill* v. *Sutphen,* 215 App. Div. 672; *Campbell* v. *Seaman,* 63 N. Y. 568.) The fact that the restriction expires in two years is no reason for refusing to enforce it. (*Thompson* v. *Diller,* 161 App. Div. 98.) The plaintiffs, having made timely protest, are entitled to a mandatory injunction directing the removal of the

defendants' building. (*Finch* v. *Unity Fee Company,
Inc.,* 211 App. Div. 430; 242 N. Y. 589; *Smith* v. *Graham,*
161 App. Div. 803; 217 N. Y. 655; *Barnett* v. *Vaughan
Institute,* 119 N. Y. Supp. 45; 134 App. Div. 921; 197
N. Y. 541; *Holt* v. *Fleischman,* 75 App. Div. 593;
*McKenna* v. *Levy,* 182 App. Div. 678; *Pellegrino* v.
*MacKenzie Street Construction Corporation,* 120 Misc.
Rep. 89; *Ives* v. *Edison,* 124 Mich. 402; *Krehl* v.
*Burrell,* L. R. [7 Ch. Div.] 551; L. R. [11 Ch. Div.]
146; *Daniel* v. *Ferguson,* L. R. [2 Ch. Div.] 27.)

POUND, J.  This action was brought to obtain a
mandatory injunction requiring the defendants to remove
a two-story business building erected by the defendant
Joray Holding Company, Inc., on real property on the
northwest corner of Madison avenue and Seventieth
street in the borough of Manhattan, New York city,
conveyed to the defendant Edward R. Finch by deed
bearing date March 3, 1924.  The building was erected
after July 1, 1924, when the premises were leased by
the defendant Finch to the defendant Holding Company,
at a cost of between $43,000 and $44,000.  The plaintiffs
seek to compel the removal of the building under a
restrictive covenant contained in a prior deed conveying
the premises, subject to which the defendant Finch took
title.  *The restriction expires on January 1, 1929.*  The
deed under which the defendant Finch holds title to
the property in question is subject to the following
restriction:

" The said party hereto of the second part, for him
(her) self, his (her) heirs and assigns, hereby covenants
and agrees to and with the said party of the first part,
its successors or assigns, that neither he (she) nor his
(her) heirs or assigns, shall or will at any time prior to
the first day of January, Nineteen hundred and twenty-
nine (1929) erect or permit upon the above granted
premises, or any part thereof, any building, except a

dwelling house for a single family, and further that neither he (she) nor his (her) heirs or assigns, shall or will at any time prior to the said first day of January, Nineteen hundred and twenty-nine (1929) erect or permit upon the above granted premises any such building, or any other structure, or any extension thereof, or projection therefrom (except partition walls or fences not exceeding twelve feet in height) within ten feet of a vertical plane passing through the center line of the block between Seventieth and Seventy-first Streets.

" These covenants shall be deemed covenants running with the land and binding upon future owners thereof, but shall expire and terminate by limitation on the first day of January Nineteen hundred and twenty-nine (1929).

·" And the said party of the first part, for itself, its successors and assigns, doth hereby covenant and agree to and with the said party of the second part, his (her) heirs or assigns, that neither it, the said party of the first part, nor its successors or assigns, owning any part of the land bounded by Seventieth Street, Madison Avenue, Seventy-first Street and a line parallel to Fifth Avenue and distant one hundred and seventy-five feet easterly therefrom shall or will, at any time, prior to the first day of January, Nineteen hundred and twenty-nine (1929) erect or permit upon any part of the land last above described, any building except dwelling houses each for a single family; and further, that neither the said party of the first part, nor its successors or assigns, shall or will, at any time prior to the first day of January, Nineteen hundred and twenty-nine (1929) erect or permit upon any part of the land last above described, any such building or any other structure, or any extension thereof, or projection therefrom (except partition walls or fences not exceeding twelve feet in height) within ten feet of a vertical plane passing through the center line of the block between Seventieth and Seventy-first Streets;

and further, that the party of the first part and its successors and assigns shall and will insert in all deeds of any part of the said land bounded by Seventieth Street, Madison Avenue, Seventy-first Street and a line parallel to Fifth Avenue, and one hundred and seventy-five (175) feet distant easterly therefrom, covenants by the grantee in such deed or deeds similar to those hereinabove made by the party hereto of the second part, and covenants by the grantor in such deed or deeds similar to those hereby made by the party hereto of the first part.

" These covenants shall be deemed covenants running with the land last above described and binding on future owners thereof, but shall expire and terminate by limitation above mentioned on the first day of January, Nineteen hundred and twenty-nine (1929)."

The lot has a frontage of twenty-one feet on Seventieth street and one hundred feet five inches on Madison avenue.

The lease is subject to the restrictive covenants above quoted. The tenant is bound to erect a business building, the owner to pay part of the cost and to assume the defense of any action brought to enforce the restriction and to waive rent during the continuance of any injunction based thereon.

The block in question, bounded on the west by Fifth avenue; on the south by Seventieth street; on the east by Madison avenue and on the north by Seventy-first street, was for many years prior to 1907 owned by the New York Public Library. The Library first sold the westerly portion of the block lying along Fifth avenue and extending back 175 feet. This plot comprised a little less than half the entire block and was sold by the Public Library without restriction. It is occupied by what is known as the Frick Mansion. In 1907 a plan was formulated to restrict the easterly portion of the

block, and thereafter, when the Library disposed of various portions of the property remaining, it did so by deeds containing or subject to the same restrictive covenant as that hereinabove mentioned. In 1916 the board of estimate and apportionment of the city of New York adopted a resolution known as the Building Zone Law, under the provisions of which both the east and west sides of Madison avenue for a distance of 100 feet from each side of the avenue from Fortieth street to One Hundred and Twentieth street were established as a business district, and from that time to the present, under such resolution this territory has been established as a business district. On May 5, 1922, the board of estimate and apportionment adopted a resolution providing for the widening of Madison avenue from Sixtieth to Seventy-second streets in order to provide for the increased business traffic on the avenue. In February, 1922, the plaintiffs purchased a plot within the restricted area on the south side of Seventy-first street, 45 feet in width and with a depth of 100 feet 5 inches. On this plot the plaintiffs erected a residence wherein they now reside. Later on the plaintiffs bought the building occupying the southwest corner of Madison avenue and Seventy-first street, which building was then and still is occupied by Dr. Tilney as a residence and doctor's office but it is not by virtue of such ownership that this action is brought.

The trial court at Special Term sustained the defendants' contentions (1) that the character of the neighborhood had in the period between the years 1907 and 1924 radically changed from a residence to a business district, and (2) that plaintiffs were permitting the use of their corner lot for business purposes, and dismissed the complaint. The Appellate Division, by a vote of three to one, reversed, made new findings and directed judgment for the plaintiffs. Under Civil Practice Act (§ 589, subd. 2)

as amended in 1926 to conform to the amended judiciary article of the New York Constitution, this court is no longer limited to the review of questions of law in such cases but may review the facts found by the Appellate Division and their decision thereon. But even when it was limited to the review of questions of law it did not hesitate to hold that equitable relief in these cases was not within the absolute discretion of the Supreme Court, but must be refused as matter of law when the facts found compelled the conclusion that an injunction would be unjust. (*McClure* v. *Leaycraft*, 183 N. Y. 36, 41.)

Since 1907 Madison avenue in the immediate vicinity of the restricted district has changed from a private residential neighborhood to a business district. Although prior to 1907 buildings had been erected on Madison avenue between Fifty-ninth and Eighty-sixth streets for business purposes, the desirability of the block in question for residential purposes had not then been materially changed but when defendant Finch purchased the property practically the entire length of Madison avenue had been given over to business purposes and the property purchased by him as well as that owned by plaintiffs had been placed by the city authorities in " an established business district." Doubtless one of the purposes of placing the original restrictions upon the property was to check the advance of business at the lines of the block. Doubtless the letter of such restriction has been violated by the defendants. But not every violation of a restrictive agreement entitles an aggrieved party to equitable relief. Each case depends on its own circumstances.

Viewing the facts in the aspect most favorable to the plaintiffs we come to the question whether the enforcement of the agreement would substantially harm the defendants without any substantial benefit to the plaintiffs. An injunction will be withheld as oppressive when it appears that the injury is not serious or substantial

and that to restrain the acts complained of would subject the other party to great inconvenience and loss. (*Starkie v. Richmond*, 155 Mass. 188, 195; *Trustees of Columbia College* v. *Thacher*, 87 N. Y. 311; *Rowland* v. *Miller*, 139 N. Y. 93, 104; *McClure* v. *Leaycraft, supra; Batchelor* v. *Hinkle*, 210 N. Y. 243; *Bull* v. *Burton*, 227 N. Y. 101; *McCann* v. *Chasm Power Co.*, 211 N. Y. 301, 306.)

Where the circumstances are not such that the public force should be brought to bear upon defendants through the courts equity will not act. The threat of restraint implied in restrictive covenants is not penal in its character. To violate them without harming any one in so doing gives rise to no cause of action. Equity takes jurisdiction in such cases to prevent irreparable injury to comfort and enjoyment although without damage but not to protect a mere preference.

What are the elements which should control the disposition of this case?

1. The life of the covenant has nearly expired and the enforcement of it cannot restore the neighborhood to its former condition by making it desirable for private residences. (*McClure* v. *Leaycraft, supra.*) Even the corner residence in the block, owned by plaintiffs, is being utilized for physicians' offices. While physicians often have their offices in their residences such use is not wholly consistent with an exclusive residential use. If often marks the first step in the decline of exclusiveness and the retreat of aristocracy.

2. The block has no special advantages for residence purposes which would offset the encroachments of business thereon as in *Pagenstecher* v. *Carlson* (146 App. Div. 738) where the restricted block faced a park.

3. The value of defendants' property for residence purposes is relatively small. It is in a business district and either it must be utilized for business purposes or it must remain idle until the expiration of the restrictive covenant.

4. The destruction of defendants' building or the denial of their right to erect such a building would inflict a loss on defendants and would neither add to the value of plaintiffs' property nor make their building more desirable for residence purposes. If the premises were adjacent to or opposite each other it might be said that plaintiffs' view would be less pleasant than it would be if the lot were vacant, but here the defendants' building might as well be in the next block. The use to which it is put is neither noisy nor offensive. The beauty and harmony of the immediate surroundings of the plaintiffs are not injuriously affected thereby. Only by putting themselves to some trouble can they see even a small portion of it from their residence. It seems to be conceded that plaintiffs are not damaged by the breach of the restrictive covenant, *i. e.,* that the value of plaintiffs' premises for residence purposes is not diminished. The question of damages is wholly immaterial. (*Trustees* v. *Lynch,* 70 N. Y. 440, 453.) But the fact that the remedy is exclusively in equity does not compel the court to do inequity. Equity does not aid doubtful rights.

The relief that plaintiffs seek in this case becomes less equitable because a building has been erected on the premises. Defendants in what appears to be at worst an honest mistake of law as to the effect of the restrictive covenant, have spent a large sum of money which the mandatory injunction would needlessly waste if it were to be enforced. This fact cannot be ignored. The owner of the lot at the time he conveyed to defendant Finch had certain rights under the decided cases. That he did not have the courage or the rashness or the desire to assert such rights does not affect the situation. Defendant Finch bought all his rights including the right to avoid the restrictive covenant if its force was spent. If defendant Finch was fast to build, plaintiffs were slow to invoke the process of the court to preserve the

*status quo.* If defendants would disregard the restrictive agreement, plaintiffs are seeking the aid of the courts to enforce a barren right. Considering the equities — all the facts and circumstances which help to show what is just and right between the parties — we find that although defendants proceeded with full knowledge of the facts and with notice of plaintiffs' claim, they had good reason to doubt whether, by reason of the change in the condition of the neighborhood and the short remaining life of the restrictive covenant, equity would enforce such rights as the plaintiffs claimed. They were not defiantly disregarding plaintiffs' rights, but were asserting their own conflicting rights. Under these conditions, even if defendants might in the exercise of discretion properly have been enjoined from proceeding with their proposed building, equity will not order them to pull down their structure when they might restore it after the lapse of two years. The rules under which mandatory injunctions have been issued for such a purpose have not been applied to a case like this. (*Brande* v. *Grace,* 154 Mass. 210; *Lynch* v. *Union Inst. for Savings,* 159 Mass. 306.)

We hold that on the law and the facts and in the exercise of a sound discretion it would be inequitable to grant the injunctive relief given below in this case for the reason that it would " bear heavily on the defendants without benefiting the plaintiffs."

The judgment of the Appellate Division should be reversed and that of the Special Term affirmed, without costs.

HISCOCK, Ch. J., CARDOZO, MCLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur.

Judgment accordingly.