Philip H. Rosenberg, Doing Business under the Trade Name and Style of "American Rug & Carpet Co.," Plaintiff, *v.* Alexander Rosenthal and Ralph Rosenthal, Copartners, Doing Business under the Trade Name and Style of "American Floor Covering Co.," Defendants.

Supreme Court, New York County, November 19, 1929.

*Morris Weiss*, for the plaintiff.

*Archibald Palmer*, for the defendants.

Peters, J. This is an application for an order restraining and enjoining the defendants and each of them, pending the outcome of this action, from using the name "American Floor Covering Co." or any similar name in connection with the sale of carpets, rugs, linoleums, oilcloths or any other floor covering, or exhibiting the said trade name on the windows, signs, billheads, letterheads or any other stationery of the defendants. Upon the call of the calendar the defendants defaulted and the motion was granted. Upon consent, however, and with the approval of the court, this

default is now opened and the matter will be disposed of on the merits.

From January, 1903, to January, 1925, the plaintiff, in partnership with Harry Kramer, was engaged in the business of selling carpets, rugs and linoleums to the wholesale and retail trade. On February 21, 1908, a certificate was duly filed by plaintiff and Kramer in the office of the clerk of the county of New York certifying that they were conducting and transacting business under the trade name and style of " American Rug & Carpet Co." On February 1, 1916, plaintiff's place of business was established at 273 Canal street, borough of Manhattan, where the business ever since has been and is at present being conducted and maintained. On January 31, 1925, the copartnership between plaintiff and Kramer was dissolved and Kramer sold to plaintiff all his right, title and interest in and to the trade name " American Rug & Carpet Co." and the good will thereof, and since then plaintiff as sole owner has been conducting the business as " American Rug & Carpet Co." at 273 Canal street. On February 5, 1925, plaintiff filed a certificate as provided for by law certifying that he was conducting and transacting business under the trade name and style of " American Rug & Carpet Co." at 273 Canal street, borough of Manhattan.

On or about January 1, 1926, defendants entered into possession of a store at premises 269 Canal street, adjoining plaintiff's place of business, and shortly thereafter a sign was placed on the premises indicating that the business was being conducted under the trade name and style of " American Floor Covering Co." The character of the sign painted on defendants' window is clearly shown in the photograph attached to defendants' opposing affidavits. The store front of the plaintiff next door is also shown by a photograph attached to defendants' papers.

The plaintiff, through the efforts of himself and his former partner, has built up a very large business under the trade name used by them. It is said by one of the defendants, the son of the defendant who established the business, that in 1915 his father was engaged in the retail business of linoleums, carpets and other floor coverings in Newark, N. J., under the firm name of the " Broad Carpet & Linoleum Company." This business was conducted on Broad street, Newark. Since 1917 the name of " American Floor Covering Co." has been and still is used by the defendants herein as their trade name.

When the defendants left Newark with their trade name of " American Floor Covering Co.," with the whole city to choose from in the matter of location, they located right next door to

plaintiff's place of business. The plaintiff's business annually runs into very large figures, whereas it appears from the credit reports attached to the moving papers and from defendants' papers that they do not anywhere near approach the volume of trade carried on by plaintiff. The large sign painted on the front of defendants' window shows that it was through no mere accident that defendants located next door to plaintiff but that it was and is a deliberate attempt on the part of defendants to acquire a part at least of the business of plaintiff by utilizing the word "American" in its name, which had acquired a secondary meaning as a trade name used by the plaintiff. No affidavit is submitted by the father of the defendant, who built up defendants' business, but instead, an affidavit is submitted by the son and by the manager of the defendants. The affidavits are in effect arguments that retailers know the various brands of carpets, rugs and linoleums of the manufacturers and that, therefore, there can be no unfair competition between these two parties. It is clearly shown, however, by plaintiff's affidavits that customers are sent to the American Rug & Carpet Co. by retailers who do not happen to have the particular goods desired, so that the customers may choose from the stock carried by plaintiff, who is a jobber, such customers knowing nothing about manufacturers, names or brands. They are sent to the plaintiff to choose rugs, carpets and linoleums, and all they are concerned with or know about are the colorings and designs and perhaps, in some instances, the quality of the goods. This is undoubtedly the reason why the words "American Floor Covering Co." are emblazoned in large letters on the store window of the defendants so that potential customers of the plaintiff may mistake the defendants' place of business as that of the plaintiff, and thereby purchase goods from the defendants which otherwise they would purchase of the plaintiff.

On numerous occasions and as late as three weeks ago, letters addressed to the "American Rug & Carpet Co." have been left by postmen, by mistake, with the defendants and although such mail was addressed to the "American Rug & Carpet Co.," it was opened by the defendants and thereafter delivered by them to plaintiff. On many of such occasions, plaintiff complained to defendants of the similarity of names and requested them to discontinue the use of their trade name. Plaintiff on such occasions stated to defendants that it was unfair for the defendants to open such mail in view of the fact that they were plaintiff's competitors. About three weeks ago a representative of defendants delivered to plaintiff a number of letters which had been delivered to defendants by mistake and which had been opened by them or their

representatives. One of the envelopes contained orders of a salesman of the plaintiff. This envelope had plaintiff's trade name printed thereon and was one regularly used by the plaintiff in his business; notwithstanding this, when delivered the envelope was opened. Within the last two or three weeks several prospective customers were sent to plaintiff's place of business by retailers but went by mistake to defendants' place of business and were not notified of the mistakes.

Where it is seen that the ultimate outcome of the suit will be in favor of the plaintiff, it is the duty of the court to issue a preliminary injunction.

Defendants attempt to raise the question of laches by reason of the fact that the plaintiff has waited practically four years before bringing suit. The question is not one of laches, however, but of acquiescence or estoppel. In *Menendez* v. *Holt* (128 U. S. 514) the court said (at p. 524): " But there is nothing here in the nature of an estoppel, nothing which renders it inequitable to arrest at this stage any further invasion of complainants' rights. There is no pretense of abandonment. That would require proof of non-user by the owner or general surrender of the use to the public. The evidence is positive that Holt & Co. continuously used the trade-mark, always asserted their exclusive right to it, and never admitted that of any other firm or person, and, in the instance of every party, including Ryder, who used this brand on flour not of Holt & Co.'s selection, that use, when it came to their knowledge, was objected to by the latter, and personal notice given, while publication was also made in the newspapers, circulating where the flour was usually marketed, containing a statement of Holt & Co.'s rights and warning against imitations. It is idle to talk of acquiescence in view of these facts. Delay in bringing suit there was, and such delay as to preclude recovery of damages for prior infringement, but there was neither conduct nor negligence which could be held to destroy the right to prevention of further injury."

In the case at bar the plaintiff, shortly after the opening of defendants' business, on noting the similarity of names and realizing that confusion might result therefrom, approached Alexander Rosenthal, who is a defendant herein and the father of the defendant who made the affidavit, and called his attention to the similarity not only in the trade names but also in the surnames of the owners of each of the businesses; that there was likely to be considerable confusion by reason of his having assumed the trade name of " American Floor Covering Co.," and damage might be caused thereby to either the plaintiff or defendants; that plaintiff at great

expense had built up a considerable business under the trade name of " American Rug & Carpet Co.;" that dealers with whom plaintiff dealt frequently sent customers to select merchandise which said dealers did not have on hand, and that such customers were likely to enter the defendants' place of business, by mistake, by reason of its close proximity to plaintiff's place of business and the similarity of trade names. Plaintiff requested the defendants to discontinue the use of the trade name " American Floor Covering Co." and offered to pay for the cost of the sign and any stationery, but the defendants refused to discontinue the use of said trade name.

In July, 1927, plaintiff through his counsel again notified the defendants to desist from the use of the name. There was, therefore, no acquiescence or estoppel shown in this case but continual protests on the part of the plaintiff against the unfair trade tactics of the defendants. Mere laches does not prevent the court from granting a preliminary injunction in a proper case. In *Goldman & Bros., Inc.*, v. *Goldstein* (125 Misc. 737) the court held: " The final objection that the defendants have been using the trade-mark for six years without protest against its use is also unavailable. Even if it should appear that the plaintiff had knowledge of its use, the doctrine of laches does not seem to have application in actions of this character. (*Menendez* v. *Holt*, 128 U. S. 514.) "

The motion for a temporary injunction as prayed for is, therefore, granted.