## UNITED STATES v. CARPENTER.

### Civ. No. 9799.

United States District Court
E. D. New York.

May 13, 1949.

J. Vincent Keogh, U. S. Atty., Brooklyn, N. Y. (Melvin H. Siegel, Special Asst. to the Atty. Gen., of counsel), for plaintiff.

David Siskind, New York City, for defendant.

KENNEDY, District Judge.

Two motions are involved here. One by the plaintiff is for a preliminary injunction (a temporary restraining order has been issued). The second by the defendant is for an order dismissing the complaint on the ground that it fails to state a claim of any kind.

The complaint alleges that Carpenter is a potato dealer in business at Water Mill, Long Island, New York. Under the Agricultural Act of 1948, Ch. 827, P.L. 897, 80th Cong., the United States Department of Agriculture is charged with the duty of supporting the price of certain agricultural commodities, including Irish potatoes. Pursuant to that act and predecessor legislation, the department has for some years purchased, and now continues to purchase, all eligible Irish potatoes offered by an eligible vendor. The supporting price is $3.45 per 100 pounds.

On November 23, 1948, according to the complaint, the United States discovered that large quantities of potatoes harvested in Canada were being exported to the United States. Some time prior to November 23, 1948, discussions were carried on between the American State Department and the Canadian Ambassador. The result of these discussions was an exchange of notes, in the course of which the Canadian government announced that it would agree to require permits for Irish potatoes and to withhold permits for all table stock potatoes. Moreover, the United States was assured by the Canadian government that no export permits would be granted to Cana-

dian growers, unless the export contract included the clause under which the importer gave an assurance that the potatoes would not be converted or reassigned for table stock purposes.

Between October, 1948, and January, 1949, the defendant Carpenter purchased more than 65 carloads of Canadian certified Irish seed potatoes. In each case there was included in the contract with the Canadian exporter the assurance that "these potatoes will be used for seed purposes only".

The complaint also alleges that the "defendant's agreement to use the seed potatoes imported from Canada for seed purposes only was made for the benefit of the United States", and that the defendant has violated these contracts made with the Canadian exporters in that he has made repeated sales of large quantities of the potatoes for table stock purposes, and has threatened to make other such sales. It is alleged that the United States has already been damaged to the extent of $9,000 by Carpenter's violations of his contracts with the Canadian exporters. The prayer for relief is that Carpenter be enjoined from further sales of the potatoes for table stock, and also that money damages be awarded to the plaintiff United States.

In support of his opposition to the issuance of an injunction and also in support of his motion to dismiss the complaint, the defendant alleges that the executive agreement between the Canadian and the American governments, evidenced by the exchange of notes, is void. It is pointed out that under the Agricultural Act of 1948, 7 U.S.C.A. § 624(b), and the Tariff Act of 1930, as amended, 19 U.S.C.A. §§ 1354, 1357–1359, there are certain restrictions against and conditions upon executive proclamations which limit the total quantity of any article that may be entered into the United States. Notably, these limitations and conditions are to be found in section 22(a) of the Agricultural Act of 1948, 7 U.S.C.A. § 624(b). The government asserts that these limitations are not applicable to the type of agreement outlined above. Concededly, the exchange of notes of November 23, 1948, was not preceded by some of the statutory conditions, i. e., hearings, and in general the agreement was not made in compliance with the statutes mentioned. And the defendant urges that the section 22(a) of the Agricultural Act, 7 U.S.C.A. § 624(b), squarely covers any executive action restricting the importation of Canadian potatoes.

As I understand the argument of the government, it is to the effect that even if the statutory limitations might otherwise be applicable, this is the kind of executive agreement which is within the competence of the United States government to make regardless of the attitude of the legislative branch, citing U. S. v. Curtiss-Wright Export Corp., 1936, 299 U.S. 304, 318, 57 S.Ct. 216, 81 L.Ed. 255; U. S. v. Belmont, 1937, 301 U.S. 324, 330, 331, 57 S.Ct. 758, 81 L.Ed. 1134; U. S. v. Pink, 1942, 315 U.S. 203, 228–230, 62 S.Ct. 552, 86 L.Ed. 796. In reply, defendant says that these cases apply only to the regulation of external or foreign affairs and that the agreement mentioned in the complaint at bar is in fact an attempt to regulate the internal economy of the United States.

But I do not think it is necessary for me, in the disposition of the motions, to decide whether the so-called executive agreement is valid.

It is conceded by the defendant that he has violated the agreement between himself and the Canadian exporters. He furnished an assurance that he would not sell the potatoes covered by his contracts for table stock purposes, yet he did that very thing.[1]

Palpably, the plaintiff United States of America, has sustained damage as a result of the defendant's action, because it has been supporting, and continues to support, the price of table stock potatoes. And in the last analysis, the defendant is unjustly enriched by a subsidy intended not for the benefit of Canadian growers but for the benefit of the American farmers.

1. There is in the papers an admission in writing by the defendant which eliminates any question or doubt about his violation of the contracts. Indeed it was intimated on the argument that the action of the defendant was deliberately taken in order to test out the rights of the parties.

The only real question tendered by the motion to dismiss the complaint, therefore, is whether the plaintiff United States of America is entitled to assert and enforce rights growing out of the contracts between the defendant and the Canadian growers. Viewed in this light, the validity of the executive agreement is actually not in issue: that agreement is not truly the subject of the controversy, but merely a fact relevant to the controversy. To state it in another way, it is quite conceivable that the Canadian government, as a matter of comity, might, without an agreement, exact from its own nationals an undertaking that every export contract relating to potatoes should contain an assurance by the importer that he would do nothing to disrupt the American system of price support. Whether the United States was the beneficiary of such self-imposed limitations by a foreign government would turn simply on the question whether the foreign government (and through it the exporters) *intended* that such limitations should enure to the benefit of the price supporting system for which the American government was paying. The agreement in the case at bar is relevant to the question of intent.

The complaint alleges that the contracts between the defendant and the Canadian exporters were in fact made for the benefit of the United States of America, at least to the extent that they contain the resale limitation referred to. On familiar principles, if this is truly a question of fact, the motion to dismiss the complaint would necessarily be denied, even though in the first instance the Canadian exporters were led to embody the limitation in their contracts by an executive agreement invalid under the laws of the United States—at least so long as the agreement was not infected by fraud or other circumstances, which would infect everything connected with it.

■ Some of the contracts between the defendant and the Canadian exporters were made in New York. If one assumes that a trier of the facts made a finding that the export contracts were for the benefit of the United States, and were breached, then there would only remain the law question whether the United States as a third party could maintain the action. I believe that both under federal law and under New York law a beneficiary of such agreements is entitled to maintain suit. German Alliance Ins. Co. v. Home Water Supply Company, 1912, 226 U.S. 220, 33 S.Ct. 32, 57 L. Ed. 195; Constable v. National Steamship Co., 1893, 154 U.S. 51, 14 S.Ct. 1062, 38 L. Ed. 903; In re United Cigar Stores Co., 2 Cir., 1934, 70 F.2d 313; Rigney v. New York Cent. & H. R. R. Co., 1916, 217 N.Y. 31, 111 N.E. 226; Coley v. Cohen, 1942, 289 N.Y. 365, 45 N.E.2d 913.

If I am right in all this, it follows that the motion to dismiss the complaint must be denied.

■ The type of preliminary injunction which ought issue (if any) presents a difficult question. It is perfectly clear to me that the plaintiff is entitled during the pendency of the action to an order restraining the defendant against the future violation of Canadian export contracts. In other words, until the case has been tried, the defendant ought not be allowed to purchase potatoes in Canada for seed purposes or to take deliveries and resell them in the United States as table stock. But the defendant has on hand a quantity of Canadian potatoes, which, according to the papers, are useless for seed. They are, however, eligible for sale as table stock. Were the preliminary injunction to cover not only future Canadian purchases and deliveries but also such potatoes on hand, those which the defendant now has would undoubtedly spoil before a trial could be had. Then, should it turn out that the plaintiff was not entitled to the relief which it seeks, the harm to the defendant would be irreparable. The plaintiff, I should think, would be, to some extent, protected in this phase of the controversy were the defendant to furnish a bond in a penal sum to be agreed upon by the parties or fixed by the court, which would make the plaintiff whole, if it eventually succeeded in the litigation, at least so far as sales of stock useless for seed and presently in the defendant's hands are concerned and so far as money damages are involved. Such an order, it seems to me, would satisfy the requirement of the cases that I must balance conveniences, Forst-

**330**

mann v. Joray Holding Co., 1926, 244 N.Y. 22, 25, 154 N.E. 652; Yakus v. U. S., 1944, 321 U.S. 414, 440, 441, 64 S.Ct. 660, 88 L. Ed. 834; International Film Co. v. Associated Producers, D.C.S.D.N.Y.1921, 273 F. 585, 588.

The motion for a preliminary injunction is granted as indicated. Settle order on notice.