■ MASPETH BRANCH REALTY, INC., Appellant, v. WALDBAUM, INC., et al., Respondents.— In an action by a property owner to enjoin defendants from interfering with plaintiff's right of way easement over adjoining land, in which a counterclaim was asserted to compel plaintiff to remove encroachments and obstructions from the right of way, the plaintiff appeals, as limited by its brief, from so much of a judgment of the Supreme Court, Kings County, rendered

February 25, 1963 after a nonjury trial before a Special Referee, as: (a) denied it injunctive relief and, in lieu thereof, awarded it damages of $17,500 "for any loss sustained, past, present or future;" and (b) denied its motion for a new trial. Judgment modified on the law and the facts as follows: (1) by striking out the first decretal paragraph denying plaintiff's motion for a new trial; (2) by striking out from the second decretal paragraph its subparagraphs 1, 2 and 3 denying plaintiff an injunction and awarding it damages of $17,500 and costs; and (3) by adding a third decretal paragraph severing the action from the counterclaim; and action remitted to the Equity Special Term of the Supreme ·Court, Kings County, for a new trial as to all the issues, other than those relating to the counterclaim, tendered by the pleadings (such new trial to be had before the court) and for further proceedings not inconsistent herewith. As so modified, the judgment is affirmed, with costs of the action and of the appeal to abide the event of the new trial. Plaintiff is the fee owner of a certain parcel of real property in Queens County. The parcel has a frontage of 150 feet on the northerly side of 10th Avenue, and a depth of 455.37 feet, except that from a point which is 188 feet north of 10th Avenue the parcel is 10 feet wider on each side for a distance of 227.37 feet north. Plaintiff also owns a right of way easement over the adjacent land on each side of its parcel for the entire depth of the parcel. Each right of way is 40 feet wide, except that along the portion ·where the parcel, which plaintiff owns in fee, is 10 feet wider on each side, each right of way is correspondingly 10 feet narrower, i.e., it is 30 feet wide. Plaintiff acquired its fee title, together with the right of way easements, about 1960 from an affiliated corporation which had the title and the easements since 1950. In 1950, plaintiff's land was improved with an unfinished industrial building. Plaintiff's grantor thereafter completed that building and erected two additional industrial buildings and an office building. The industrial buildings are successively contiguous, one to another, running north from 10th Avenue almost to the rear lot line; and the easterly walls of the buildings run approximately and generally along the line that is the easterly plot line at the 150-foot wide portions of the plot and an extension of that plot line where the parcel is 170 feet wide. The surface of plaintiff's land and that of the land easterly thereof to 154th Street, a distance of about 190 feet, was about 4 feet below the legal or sidewalk grade. There are large doors at both sides of the third building from 10th Avenue, which were provided for the delivery and shipment of goods and also to permit large tractor trailers to be driven into and out of the building. The over-all length of tractor trailers runs up to as much as 55 feet, and they are about 8 feet wide. Plaintiff's premises have been in possession of a lessee or a sublessee since 1957. In the Fall of 1961, the defendant Crossroads having bought the unimproved tract of land to the east of plaintiff's parcel, including the right of way land, caused work to be commenced for the construction of a building for supermarket purposes in the portion of its premises which is to the east of the easterly right of way land. The work continued after defendant Waldbaum took a lease to those premises and entered into a construction contract with defendant Freeman as contractor. The supermarket building was erected about 122 feet north of 10th Avenue, with its rear, which is about 280 feet long, approximately along the easterly boundary of the easterly right of way; and it was erected on the basis of a land grade which would be the same as the legal grade. However, in the course of raising the level of the ground, the level of part of the subject easement land was also raised, i.e., the level was raised over a width of nearly 20 feet at the easterly side of the subject easement land for about the length of the rear of the supermarket building. This elevated part was opposite plaintiff's third building from 10th Avenue, where the door to the easement land is located. In addition, some earth, rubble,

building material and debris were deposited generally on other portions of the subject easement land, and puddles of water accumulated in especially low parts of the easement land. When this condition of the easement land first came to plaintiff's attention in the Summer of 1962, as the result of a complaint from its lessee that water had seeped into a building or buildings of plaintiff, an officer of plaintiff complained to defendant Waldbaum and was assured by the latter that the condition would be corrected. Nevertheless, by the time this action was commenced in December, 1962, defendants had not restored the easement land to its former condition. Instead, defendants extended their prior elevation of the land grade to further portions of the easement land and even to the walls of two of plaintiff's buildings, in order to conform to the increased height or level of all of Waldbaum's land; and defendants also put a blacktop surface on all of the elevated land. In sum, this included all of the easterly easement land from 10th Avenue north for about 200 feet, to about plaintiff's third building from 10th Avenue, and also the narrow strip between the easement land and plaintiff's first two buildings; and also the width of nearly 20 feet at the easterly side of the easement land opposite plaintiff's third building. The result was to leave, immediately alongside the delivery and shipment doorway of plaintiff's third building, a strip of land about 4 feet lower than the land about it. The width of this strip consisted of about 10 feet of plaintiff's own land and about 12 feet of the easement land, and its length ran to the rear property line. For part of the length between the two grades there, defendants put up bulkheading to support the higher land. As to the southerly end of this lower strip of land, there is a slope between that portion and the higher land immediately to the south. Before defendants commenced their work in changing the grade of the land, their representative proposed to plaintiff that the parties make a deal which would in part release the easterly right of way. However, the parties could not come to terms. It is plaintiff's claim, among other things, that because of the two levels in the easement land it has become impractical, if not impossible, to bring large tractor trailers through that land up to the door of plaintiff's building and into the building; and that, because of the changed terrain, water will accumulate in the lower part of the easement land and seep into the building alongside. It cannot be disputed that defendants had no right to do what they did in the easement land and thereby obstruct passage therein, and generally an injunction should be granted to restrain such action (*Herman* v. *Roberts*, 119 N. Y. 37). Difficult questions sometimes arise as to whether an injunction should issue against the erection and maintenance of structures or installations in violation of another's rights, when the structures or installations have already been built at great cost, especially when weighed against the extent of the harm done thereby to the plaintiff (see *Forstmann* v. *Joray Holding Co.*, 244 N. Y. 22; *Evangelical Lutheran Church* v. *Sahlem*, 254 N. Y. 161). In our opinion, the injury to plaintiff was substantial. For the entire length of its third building from 10th Avenue, where the door was located and where the width of the easement was 30 feet, there remained only a strip about 12 feet wide at the lower level opposite the building. The remainder of the easement land along there was rendered absolutely useless for vehicular traffic to and from plaintiff's building. As a result, the lower portion too has become of doubtful value. Large tractor trailers certainly cannot be maneuvered through its relatively narrow width so as to bring them into and out of the building. Even the bringing of such vehicles straight through that portion of the land, without bringing them into and out of the building, would present difficulties, since that would necessitate backing up and passing over the sloped portion, and would involve the hazard of jackknifing in a relatively narrow lane. Although plaintiff owns an additional width of 10 feet of land along this portion

of the easement land, plaintiff is not required to devote that 10 feet to driveway purposes. Plaintiff is entitled to the full utilization of the easement as originally granted. Unlike the *Forstmann* case (244 N. Y. 22, *supra*), defendants were not innocent actors; they obstructed the easement land in defiance of plaintiff's rights; plaintiff's injury is substantial; plaintiff's right will not soon expire but rather will continue ad infinitum; the cost of the obstructions in the easement land or of their removal has not been shown to be great; and plaintiff has not been dilatory in pressing its rights. It may be that under certain circumstances the findings of a Trial Judge on the basis of his personal inspections of the subject property are conclusive upon an appellate court (*Haber* v. *Paramount Ice Corp.*, 239 App. Div. 324, affd. 264 N. Y. 98). However, in this case we do not believe that such rule may be invoked (cf. *Keefe* v. *Annpaul Realty Co.*, 215 App. Div. 301; *Stokes Bros.* v. *Drefs*, 244 App. Div. 524). An injunction should issue in this case requiring defendants to restore the subject easement land to its prior condition, unless the new evidence at the new trial should require a contrary direction. Since the judgment in an equity action is properly based on the conditions prevailing at the time of the trial, the new evidence should, of course, show the conditions existing as of the date of the new trial and should embrace the facts which have occurred subsequent to the events proved at the first trial. Kleinfeld, Acting P. J., Christ, Brennan, Hill and Rabin, JJ., concur.