Joseph F. Hawkins, J.
Plaintiff moves for summary judgment, praying for a mandatory injunction requiring the defendant to remove a structure allegedly erected in violation of restrictive covenants and the local Zoning Ordinance regulating height and proximity to plaintiff’s property. Inspired by his studies of structures made of wood in Japan and Scandinavia, the defendant, an architect, has designed and personally helped build a most unique structure, which apparently defies precise classification. It is variously described by the defendant as a “bath annex ” and “ interim residence ”; by Professor James F. Fitch of Columbia, in his affidavit in opposition, as a “ structure ’ ’ or “hath annex”; by the plaintiff, more conventionally, as a “ structure ” and “double tower”; by plaintiff’s attorney as a “ tower ”; by defendant’s attorney as a “ residence ”; by the New York Times on August 2, 1964, as a “ hath tower ”; and, finally, by the magazine “ Interior ” issue of March, 1963, as *598 a “bath tower ” with “relaxing platform We cite these varying descriptions with no derision intended but merely to illustrate the problem involved in arriving at a proper classification or designation since such classification may be of consummate importance in ultimately determining whether the covenants and zoning restrictions apply to this structure.
Plaintiff is the owner of a home situated in the Town of Stony Point in a development of some 100 acres on a hilltop. It was conceived and developed by Professor Pitch and is presently limited to some six families. The properties are deed restricted so as to assure a view of the Hudson River to each owner and so designed as to accord each a most aesthetic and superior natural setting. The defendant’s property lies between the Hudson River and the plaintiff’s land. Plaintiff alleges that he purchased the property because, at that time, it provided maximum privacy and an ‘ ‘ unobstructed view of the Hudson River and the surrounding woods ”.
The complaint alleges that the restrictive covenants, inter alia, prohibit the erection of any structure within 30 feet of an owner’s “ boundary line ” and further limits each property owner to “ only one residence for single family occupancy that the defendant’s structure is within the proscribed area by some two feet; that it exceeds two stories in height and a maximum of 18.76 feet in violation of the Zoning Ordinance; and that the defendant has no valid building permit.
Urging that no bona fide issue exists, plaintiff urges summary judgment should be granted. Defendant, although he “ will concede that basic elements of the plaintiff’s case have been established ”, nevertheless contends that plaintiff’s laches and the de minimis nature of plaintiff’s damages bar equity’s intervention.
If the facts relating to the distance and height of the structure are as plaintiff alleges — and they appear to be so despite the defendant’s semantic quibbling — there remain only issues of law presenting no undue difficulty.
The defendant lays much stress upon the issuance of a building permit by the township. The town cannot with any greater impunity ignore the requirements of its own Zoning Ordinance than can an owner the express restraints contained in restrictive covenants to which he has expressly agreed.
The court, by virtue of the defendant’s intransigence, is confronted with that ever-recurring dilemma: how to reconcile legal rights and reciprocal duties and obligations and yet leave to the arts and sciences requisite freedom to create and to innovate, and yet not assume the role of censor. Zealous as we may be of *599 preserving architectural integrity and creativity, the law must give due note to the defendant’s reciprocal obligation not to impose his creation upon a neighbor in violation of the latter’s legal rights, both property and personal. Architecture, undeniably, is one of man’s greatest and oldest arts. Although the law inescapably and inevitably impinges upon virtually every pursuit, it is most diffident to interfere with artists and scientists. We do not seek to impose upon the defendant neither the plaintiff’s nor the courts’ aesthetic standards. In this regard, the plaintiff’s language bears repeating: “On the subject of the aesthetic beauty of the defendant’s structure, it could be the Taj Mahal, the Leaning Tower of Pisa, or any other recognized architectural wonder and I still would not wish to have it in my back yard, obstructing my view of the Hudson River and invading my privacy. ’ ’
The defendant’s concession thus eliminates the need of any detailed review of the charges and countercharges as to precisely when and under what circumstances the plaintiff first became aware of the defendant’s breaches. Of primary significance is whether the defense of laches is available, thereby precluding injunctive relief.
Laches is not to be confused with reluctance precipitously to initiate litigation. It imports such delay that equity will presume a “ disadvantage to another ”. (Stines, S. J., in Chase v. Chase, 20 R. I. 202, 204.) The plaintiff appears to have shown most commendable efforts to preserve neighborly peace and to have resorted to the instant proceedings as a last resort. The situation is best characterized by Carmody-Wait, New York Practice (vol. 10, p. 535): “All the circumstances are to be considered, and where it appears that plaintiff never acquiesed in the violation of his rights, but has merely exercised patience, delay should not militate against him.” (Citing Rosenberg v. Rosenthal, 135 Misc. 282.)
We find no merit in the remaining defense, sounding in de minimis, that it is mandatory for plaintiff to establish his damages on a “ dollar and cents ” basis. As was stated by the Court of Appeals in Evangelical Lutheran Church v. Sahlem (254 N. Y. 161,166-167): “ Relief is not withheld because the money damage is unsubstantial or even none at all (Trustees of Columbia College v. Lynch, 70 N. Y. 440, 453; Trustees of Columbia College v. Thacher, 87 N. Y. 311, 316; Rowland v. Miller, 139 N. Y. 93, 103; Forstmann v. Joray Holding Co., Inc., 244 N. Y. 22, 31; Star Brewery Co. v. Primas, 163 Ill. 652; Lord Manners v. Johnson, L. R. I Ch. Div. 673). ‘ If the construction of the instrument be clear, and the breach clear, then it is not a ques *600 tion of damage, but the mere circumstance of a breach of covenant afford sufficient ground for the court to interfere by injunction ’ (Tipping v. Eckersley, 2 K. & J. 264, 270, quoted in Trustees of Columbia College v. Thacher, supra).”
The defendant, if he so pleases, can erect a tower, be it bath or Babel “ whose top may reach unto heaven” (Genesis, ch. 11.4); but not too close to his neighbor’s land if he covenanted to refrain from so doing.
Significantly, the defendant does not urge that his invasion of plaintiff’s rights was inadvertent. As an architect, surely the defendant should be more than passing conversant with zoning regulations and restrictive covenants. As stated by the revered Chief Judge Cardozo in Evangelical Lutheran Church v. Sahlem (supra, p. 168) when weighing equity as against the acts of a religious body which knowingly and willfully violated the property rights of a very parishioner under a restrictive covenant: “Neither at law nor in equity is it written that a license has been granted to religious corporations, by reason of the high purpose of their being, to set covenants at naught. Indeed, if in such matters there can be degrees of obligation, one would suppose that a more sensitive adherence to the demands of plighted faith might be expected of them than would be looked for of the world at large.”
The defendant, considering his professional background in this calling, should be held to a similar degree of ‘1 sensitive adherence ”. On the contrary, here we encounter a studied and cavalier disregard for legal obligations solemnly arrived at and engendered by mutuality.
Plaintiff’s motion is granted, limited, however, to restraining, pendente lite, the defendant from erecting any other structure on his property whether it be denominated a “residence” or “ annex ” or by any other designation or euphemism and with such injunction to continue until the trial of the action. ' To deny plaintiff the temporary relief sought by deferring same until the trial, is to deprive the plaintiff of any relief considering the congested state of the calendar and the very little likelihood of a trial within a reasonable time. The plaintiff is also permitted to enter upon the defendant’s lands to take and make such measurements and surveys, upon reasonable notice and at appropriate times, as may be required. Pursuant to CPLR-, the plaintiff’s undertaking is fixed in the amount of $1,000. 'Settle order on notice.